738 A.2d 969 (1999)
325 N.J. Super. 236
CITY OF CAMDEN, Appellant,
v.
Christine Todd WHITMAN, Governor of the State of New Jersey, The New Jersey Senate and its Members, Donald Difrancesco, as its President and as a Representative of the Individual Members of the New Jersey Senate, The New Jersey Assembly and its Members, Jack Collins, as its Speaker and as a Representative of the Individual Members of the New Jersey Assembly, Jane Kenny, Commissioner, Department of Community Affairs, and Stephen R. Sasala, II-Acting Director, State Division of Local Government Services and Chairman of the Local Finance Board, Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted September 14, 1999.
Decided October 12, 1999.
*970 John A. Misci, Jr., City Attorney, for appellant.
John J. Farmer, Jr., Attorney General, for respondents (Joseph L. Yannotti, Assistant Attorney General, of counsel; Daniel P. Reynolds, Deputy Attorney General, on the brief).
Before Judges MUIR, Jr., WALLACE, Jr., and CUFF.
The opinion of the court was delivered by
MUIR, Jr., P.J.A.D.
On a direct appeal to this court, the City of Camden seeks a declaratory judgment that a provision of the New Jersey General Appropriations Act for 1998-1999 (L.1998, c. 45) is unconstitutional. The Act provided Camden with $15,000,000 in special aid. It also authorized the Local Finance Board (Board) to create a financial review board "to approve, implement and enforce a financial plan for the City of Camden." The City contends the authorization to create the financial review board violates the New Jersey Constitution's mandates that legislative acts have a single object and that the Legislature cannot pass special laws regulating the internal affairs of municipalities. See N.J. Const. art. VIII, § 2, ¶ 4; art. IV, § 7, ¶ 9.
Although the filing of a declaratory judgment directly with this court and not in the trial court is a procedural anomaly, we exercise original jurisdiction and conclude there is no justiciable issue presented by the appeal given the passage of time and recent events, particularly the Special Municipal Aid Act, N.J.S.A. 52:27D-118.24 to -118.31 (L. 1999, c. 156, § 8) (SMAA).

I
The facts and events relevant to this appeal began with the General Appropriations Act, adopted by the Legislature and approved by Governor Whitman on June 30, 1998. The Act contained special aid appropriations of $15,000,000 to the City of Camden and lesser amounts to Jersey City *971 and the City of Paterson. As to the City of Camden, the Act provided:
In addition to any other powers conferred by law, the Local Finance Board is hereby authorized to create, by resolution, a financial review board to approve, implement and enforce a financial plan for the City of Camden for which the Director of the Division of Local Government Services in the Department of Community Affairs has determined that conditions exist that create extreme difficulty in adopting a budget in compliance with Local Budget Law, in issuing indebtedness as permitted by law, or in funding capital improvements essential to the protection of the public health, safety and welfare. Any financial review board so created shall consist of seven members appointed by the Governor, and shall exercise its powers and duties under rules and regulations adopted by the Local Finance Board. The City of Camden shall establish a financial plan, subject to the board's approval, to address the budgetary, operational, capital and economic development needs of the municipality. The financial review board shall have the power to approve: the annual budget of the municipality, the issuance of debt, labor contracts entered into during the time of supervision of the financial review board and municipal expenditures if so directed by the Local Finance Board, to the extent that the board shall specify.
The Act recognized the need to afford unique financial aid to the three fiscally distressed municipalities. The causes of the distress are myriad. Those relevant to Camden in 1998 were:
1. it had a $15,000,000 budget deficit, which was anticipated to increase incrementally;
2. at the end of 1997, it had an operating deficit of $948,221 and deferred charges in the amount of $859,000;
3. its tax collection rate was 79.19%, well below the statewide average of 95%;
4. its tax collection rate for delinquent taxes was 18.17%;
5. it had $4,000,000 in outstanding current taxes; $23,000,000 in tax title liens; and
6. it had $38,000,000 in tax foreclosed property.
Moreover, even though state statutes required Camden to adopt a budget ten months earlier, by June 1998 it had not adopted a 1998 budget. See generally N.J.S.A. 40A:4-10.
Other evidence of fiscal instability was that Camden's percentage of net debt, 3.59% ($34,000,000), exceeded the limit established by statute, and it had authorized but unissued $6,900,000 in bonds and notes, a circumstance apparently engendered by its inability to obtain market access and favorable interest rates on its borrowings. The inability to issue bonds have made Camden unable to fund capital improvements necessary to promote public safety, health, and welfare.
Additionally, Camden had consistently over-anticipated revenues in prior yearly budgets. That practice allowed it to over budget expenditures and spend with no revenue to support the spending, creating, in part, the deficit that existed.
Consonant with the Act's authorization and after hearings on notice to Camden, the Board adopted a resolution creating the financial review board for the City. In doing so, the Board identified the previously recited causes of Camden's fiscal instability.
Thereafter, the Board, again on notice to the City, held a public hearing for "the Adoption of an Emergency New Rule and Concurrent Proposed New Rule for the Camden Financial Review Board." Those proposed regulations became effective August 13, 1998. There is no dispute the Board-created financial review board supervised Camden's fiscal matters for the 1998-99 fiscal year and that Camden utilized *972 the $15,000,000 in aid. This appeal ensued.
Subsequent to the filing of the appeal, relevant matters of public record occurred. See N.J.R.E. 201(a), (b). After an abortive attempt to file for bankruptcy, the City agreed to subject its fiscal operations to review by the financial review board in exchange for the State's commitment to afford it some $63,500,000 in state emergency aid. Consonantly, the Legislature confronted with fiscal instability of additional municipalities, enacted, and Governor Whitman signed into law, L.1999, c. 156, which amended and supplemented the SMAA, supra, and the Supplemental Municipal Property Tax Relief Act, N.J.S.A. 52:27D-118.32 to -118.42. The SMAA vested the Director of the Division of Local Government Services and the Board with the authority to recommend short-term financial aid to those municipalities deemed fiscally distressed. The aid encompassed grants or loans. At the same time, the SMAA empowered the Board to create an individual financial review board to oversee the fiscal conditions of an eligible municipality.
The SMAA outlined the parameters for a financial review board and its authority:
A financial review board shall be authorized to approve, implement and enforce a financial plan for any municipality in which it has been created. A financial review board so created shall consist of five members, one of whom shall be the mayor of the municipality or the mayor's designee; one of whom shall be appointed by the Governor and shall be a resident of the municipality who is not an elected official or employee of the municipality; one of whom shall be the Commissioner of the Department of Community Affairs or the commissioner's designee; one of whom shall be the State Treasurer or the Treasurer's designee; and one of whom shall be appointed by the Governor and shall be an officer of the Executive Branch of State government. The financial review board shall exercise its powers and duties under rules and regulations adopted by the board. A municipality subject to a financial review board shall establish a financial plan, subject to the financial review board's approval, to address the budgetary, operational, capital and economic development needs of the municipality. The financial review board shall also have the power to approve: the annual budget of the municipality, the issuance of debt, all contracts entered into during the time of supervision of the financial review board, and municipal expenditures, if so directed by the board, to the extent that the financial review board shall specify. The financial review board may delegate to the municipality such of its powers, under such circumstances and subject to such conditions, as it may determine. A financial review board shall operate until such time that the board finds that the conditions that led to the creation of the financial review board have been substantially abated.
Notwithstanding the provisions of section 5 of P.L.1999, c. 156 (C.52:27D-118.30a) or any other law to the contrary, in addition to other powers conferred by law, the Local Finance Board is hereby authorized to approve, by resolution, the continuation of the financial review board for the City of Camden as constituted which was created by the Local Finance Board pursuant to P.L. 1998, c. 45. On and after the continuation of the financial review board pursuant to resolution of the Local Finance Board, the financial review board is deemed to be a financial review board created pursuant to section 5 of P.L. 1999, c. 156 (C.52:27D-118.30a), and in all other respects subject to the procedures pursuant to that section. For the purposes of subsections c. and d. of section 5 of P.L.1999, c. 156 (C.52:27D-118.30a), June 30, 2000 is, if the municipality continues to be subject to the oversight of the financial review board *973 at that date, deemed to be the end of the second year in which the financial review board has been in operation.

[N.J.S.A. 52:27D-118.30b]

II
Declaratory judgment actions challenging the constitutionality of a legislative enactment must be initiated at the trial level of the Superior Court. Both the nature of a declaratory judgment and court rule dictate such a case be resolved first at the trial level.
The Uniform Declaratory Judgment Act, N.J.S.A. 2A:16-50 to -62, provides that a party affected by a statute may have the constitutionality of a statute resolved in a declaratory action. N.J.S.A. 2A:16-53. The Act also directs that, when a declaratory judgment action involves the determination of an issue of fact, the issue may be tried and determined as other fact issues are determined in courts of this state. N.J.S.A. 2A:16-58.
Court rule governing the Superior Court Trial Division establishes original jurisdiction of the trial court over declaratory judgment actions. R. 4:42-3. In doing so, it recognizes the trial court's jurisdiction to deal with and resolve issues of fact that may arise in declaratory judgment actions.
The Court rules governing the Superior Court Appellate Division do not vest this court with such original jurisdiction. See R. 2:2-3. By so doing, it recognizes this court generally does not have jurisdiction to resolve issues of fact in the first instance.
Challenges to the constitutionality of state statutes and other state legislative enactments have consistently been initiated in the trial court. See Chamber of Commerce of the U.S. v. State of N.J., 89 N.J. 131, 445 A.2d 353 (1982); Vreeland v. Byrne, 72 N.J. 292, 370 A.2d 825 (1977); New Jersey Mortgage Fin. Agency v. McCrane, 56 N.J. 414, 267 A.2d 24 (1970); Civil Serv. Comm'n v. Senate of N.J., 165 N.J.Super. 144, 397 A.2d 1098 (App.Div.), certif. denied, 81 N.J. 266, 405 A.2d 811 (1979); Borough of Glassboro v. Byrne, 141 N.J.Super. 19, 357 A.2d 65 (App.Div.), certif. denied, 71 N.J. 518-19, 366 A.2d 674 (1976). This case is no different. Consequently, it was improperly filed in the Appellate Division.
The procedural anomaly notwithstanding, we elect to exercise original jurisdiction and resolve the appeal. See R. 2:10-5. We do so to curtail unnecessary expenditure of time, effort, and public funds. We are satisfied resort to original jurisdiction is in the public interest. See Blast v. Ehret, 118 N.J.Super. 501, 288 A.2d 861 (App.Div.1972).

III
It is ingrained in our case law that courts of this state will not determine constitutional questions unless absolutely imperative to resolve issues in litigation. Donadio v. Cunningham, 58 N.J. 309, 325-26, 277 A.2d 375 (1971); Ahto v. Weaver, 39 N.J. 418, 428, 189 A.2d 27 (1963); State v. Salerno, 27 N.J. 289, 296, 142 A.2d 636 (1958); Errichetti v. Merlino, 188 N.J.Super. 309, 343, 457 A.2d 476 (Law Div.1982). That imperative level is never reached when the issues presented are non-justiciable. Stated otherwise, courts of this state do not resolve issues that have become moot due to the passage of time or intervening events.
The issues raised are moot. Not only has the time for effective supervision of the 1998-99 fiscal year long passed, but Camden has agreed to continue fiscal supervision by its financial review board as part of its new distressed city aid from the state. Fact and logic belie the justiciability of Camden's claims under these circumstances.
Beyond that, the enactment of the SMAA counteracts any justification for resolution of this appeal. The only potentially viable issue raised by the appeal is the alleged violation of the constitutional *974 proscription against special legislation. The SMAA supplants the need for us to address that issue. The SMAA is general legislation. It is applicable to all financially distressed municipalities. It saves the financial review board created by the 1998-99 Appropriations Act from any alleged constitutional infirmity on special legislation grounds.
Accordingly, the appeal is dismissed.