882 A.2d 972 (2005)
380 N.J. Super. 463
ALLSTATE INSURANCE COMPANY, Plaintiff-Respondent,
v.
Ulises SABATO, M.D., as assignee of Nurya Noriega, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 12, 2005.
Decided October 3, 2005.
*974 S. Gregory Moscaritolo, for appellant.
Pringle Quinn Anzano, for respondent (Todd J. Schwartz, on the brief).
Peter C. Harvey, Attorney General, for amicus curiae Donald Bryan, Acting Commissioner of Banking and Insurance, (Michael J. Haas, Assistant Attorney General, of counsel; Paul G. Witko, Deputy Attorney General, on the brief).
Before Judges CUFF, LINTNER, and GILROY.
The opinion of the court was delivered by
LINTNER, J.A.D.
Defendant, Dr. Ulises Sabato, appeals from a Law Division order vacating an alternative dispute resolution award finding plaintiff, Allstate Insurance Company (Allstate), in bad faith. The order also reduced the attorney's fees awarded to Sabato. We dismiss the appeal insofar as it seeks a reversal of the Law Division order vacating the finding that Allstate acted in bad faith. However, we reverse the order reducing defendant's attorney's fees and remand for further proceedings.
Because they are interdependent, we combine the procedural history and relevant facts, which are largely undisputed. Nurya Noriega received treatment from Sabato following a November 1999 automobile accident. At the time of the accident, Noriega was insured for Personal Injury Protection (PIP) benefits under a policy issued by Allstate. After Allstate denied coverage, Sabato took an assignment of Noriega's claim and filed a demand for PIP arbitration with the American Arbitration Association seeking to recover medical expenses totaling $5494.44. An Alternative Dispute Resolution Professional (umpire) was appointed. Allstate defended, claiming that Sabato violated the Patient Records Rule, N.J.A.C. 13:35-6.5(b), requiring physicians to maintain contemporaneous permanent treatment records. Accepting Allstate's defense, the umpire found that Sabato's failure to satisfy the requirements of the Patient Records Rule precluded his recovery of PIP benefits.
Sabato filed an Order to Show Cause and Verified Complaint seeking to vacate the umpire's award. Arguing that N.J.S.A. 39:6A-5.1 and N.J.A.C. 11:3-5.6(d)(1) control and require the use of the Alternative Procedure for Dispute Resolution Act (APDRA), Sabato maintained that the award should be vacated, modified, or corrected because the umpire's decision erroneously applied the law to the issues and facts. N.J.S.A. 2A:23A-13c(5). Finding that there was insufficient evidence to indicate bad faith on the part of Allstate, the judge nevertheless concluded that Allstate had overlooked the records in its possession and had not provided them to its counsel. The judge vacated the award and ordered a remand to an independent umpire other than the one who had entered the previous award.
The new umpire found that Allstate acted in bad faith by allowing its counsel to raise the Patient Records Rule when it had the records in its file and thus knew or should have known that the defense was baseless. He awarded $2771.12 representing Sabato's amended demand, reflecting Allstate's partial payment of the medical bills. The umpire also awarded attorney's fees totaling $7125 and $525, which included the time spent by Sabato's counsel on the Order to Show Cause, as well as the *975 time spent on the second alternative dispute hearing.
Allstate filed an Order to Show Cause and a Verified Complaint seeking to vacate the finding that it had acted in bad faith and reduce Sabato's attorney's fees to include only those incurred for the time spent before the second umpire. Allstate claimed that the umpire had erroneously applied the law to the facts because the issues of bad faith and attorney's fees, which generated the prior Order to Show Cause, were outside the scope of the second dispute resolution proceeding. In response, Sabato asserted that enactment of the Automobile Insurance Cost Reduction Act (AICRA), specifically N.J.S.A. 39:6A-5.1, did not change the standard of review imposed by the Arbitration Act, N.J.S.A. 2A:24-8, which was in effect at the time of Sabato's policy. Therefore, he claimed that the adoption by the Commissioner of Banking and Insurance (the Commissioner) of N.J.A.C. 11:3-5.6(d)(1), affording an expanded right of review under APDRA, was invalid as ultra vires. Sabato also argued that the umpire's award of attorney's fees and costs was proper because they were incurred in successfully prosecuting his claim.
Vacating the finding of bad faith, a second Law Division judge found that the umpire's determination that Allstate acted in bad faith was an erroneous application of the law. She noted the findings of the previous Law Division judge that Sabato had not established that Allstate's inadvertence was bad faith. Limiting the fees to those incurred in the hearing before the second umpire, the judge found that the award of attorney's fees was "directly related to his finding of bad faith" and the previous Law Division judge had not awarded attorney's fees to either party. Following Sabato's appeal, we granted the Commissioner's application to file as amicus curiae.
On appeal, Sabato asserts that the judge erred in reducing his attorney's fees by finding that the umpire erroneously applied the law to the facts in determining that Allstate acted in bad faith. Similarly, he claims that proper application of N.J.A.C. 11:3-5.6 and N.J.S.A. 2A:23A-13 should not have resulted in the reduction of his counsel fees, all of which were incurred in the successful prosecution of his PIP claim. Additionally, Sabato asserts that the Commissioner's adoption of N.J.A.C. 11:3-5.6 insofar as it permits the relaxed standard of review under APDRA is not authorized by AICRA, specifically N.J.S.A. 39:6A-5.1, and unconstitutionally usurps the power of the court by precluding access to the Appellate Division. Finally, he argues, for the first time on appeal, that because the underlying accident occurred on November 4, 1999, the Allstate policy predated the Commissioner's adoption of N.J.A.C. 11:3-5.6, and, therefore the Administrative Code provision should not be applied retroactively.
Allstate maintains that the Law Division judge correctly applied APDRA in vacating the findings of the second umpire and properly applied the law to the facts. Allstate further argues that we should not reach the question of constitutionality because: (1) Sabato is barred from challenging the administrative regulation by the doctrine of equitable estoppel; and (2) it would have prevailed regardless of whether the judge applied the standard of review prescribed by either the Arbitration Act or APDRA. The Commissioner argues that the standard of review set forth in N.J.A.C. 11:3-5.6 represents a valid and constitutional exercise of legislative authority.
We have serious concerns respecting the constitutionality of a statute or *976 administrative provision that limits an insured's access to the Appellate Division based upon an insurer's decision to require dispute resolution in its policy. We need not decide the constitutional issues raised, however, because we are satisfied that reasonable attorney's fees are reviewable by us, notwithstanding APDRA's proscription of appeal, as one of "those `rare circumstances' where public policy ... trigger[s] the general supervisory power of the Courts." Weinstock v. Weinstock, 377 N.J.Super. 182, 189, 871 A.2d 776 (App. Div.2005) (quoting Mt. Hope Dev. Assocs. EAJ, Inc. v. Mt. Hope Waterpower Project, L.P., 154 N.J. 141, 152, 712 A.2d 180 (1998)).
We commence our analysis with a discussion of the relevant principles established by AICRA and applicable statutory provisions for dispute resolution. From its beginning, the no-fault statutory scheme reflected the legislative intent "to eliminate minor personal-injury-automobile-negligence cases from the court system in order to achieve economy and provide lower insurance premiums to the public." New Jersey Coalition of Health Care Prof'ls, Inc. v. New Jersey Dept. of Banking and Ins., 323 N.J.Super. 207, 218, 732 A.2d 1063 (App.Div.), certif. denied, 162 N.J. 485, 744 A.2d 1208 (1999). Further "comprehensive changes" made by the adoption of AICRA in May 1998 included several amendments to the law governing PIP benefits. Id. at 218, 732 A.2d 1063. These were to some extent embodied in the provisions of N.J.S.A. 39:6A-5.1.
a. Any dispute regarding the recovery of medical expense benefits or other benefits provided under personal injury protection coverage pursuant to section 4 of P.L. 1972, c. 70 (C.39:6A-4), section 4 of P.L. 1998, c. 21 (C.39:6A-3.1) or section 45 of P.L. 2003, c. 89 (C.39:6A-3.3) arising out of the operation, ownership, maintenance or use of an automobile may be submitted to dispute resolution on the initiative of any party to the dispute, as hereinafter provided.
[N.J.S.A. 39:6A-5.1a (emphasis added).]
Prior to AICRA, only a claimant had the option to choose in the first instance to submit a PIP dispute to arbitration or the court. Under the AICRA scheme, either party is able to control the forum by choosing dispute resolution rather than an action in Superior Court. In other words, under AICRA the option to choose alternative dispute resolution was extended to the insurer. The dispute may proceed to court only if neither side chooses alternative dispute resolution. See Coalition for Quality Health Care v. New Jersey Dept. of Banking and Ins., 348 N.J.Super. 272, 311, 791 A.2d 1085 (App.Div.), certif. denied, 174 N.J. 194, 803 A.2d 1165 (2002) (Coalition II). As a result, insurance carriers can now create a "blanket policy" to choose alternative dispute resolution in all PIP disputes by including the exercise of its option in a provision of its policy. We observed in Coalition II that under N.J.S.A. 39:6A-3.1a the adoption and approval of language that
steer[s] PIP disputes to dispute resolution is consistent with the policy goals of AICRA in that it will foster prompt resolution of disputes without resort to protracted litigation, ease court congestion and reduce costs to the automobile insurance system.
[Ibid.]
N.J.S.A. 39:6A-5.1b expressly authorizes the Commissioner to promulgate rules and regulations respecting the conduct of dispute resolution and designate an organization to administer the dispute resolution program. In Coalition II, we validated the regulations embodied in the present version of N.J.A.C. 11:3-5.6 as legislatively *977 authorized by AICRA and properly approved by the Commissioner, including the requirement adopting APDRA as the procedure to be used for determining PIP benefits disputes. Coalition for Quality Health Care, supra, 348 N.J.Super. at 312, 791 A.2d 1085.
In 1998 when N.J.S.A. 39:6A-5.1 was adopted, both the Arbitration Act, N.J.S.A. 2A:24-1 to -11,[1] and APDRA, N.J.S.A. 2A:23A-1 to -30, were in effect. Under the Arbitration Act, parties waived their right to a jury trial, but were entitled to limited redress to the courts, including the Appellate Division, to vacate an arbitration award that was procured by "fraud, corruption, or similar wrong doing on the part of the arbitrators. . . ." Mt. Hope, supra, 154 N.J. at 149, 712 A.2d 180 (quoting Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 358, 640 A.2d 788 (1994)); see also Habick v. Liberty Mut. Fire Ins. Co., 320 N.J.Super. 244, 248, 727 A.2d 51 (App.Div.), certif. denied, 161 N.J. 149, 735 A.2d 574 (1999).[2]
APDRA, adopted in 1987, provided an expanded right of subject matter review over the Arbitration Act by permitting court review of an umpire's decision for prejudicial error resulting from erroneous application of law to the issues and facts presented. Weinstock, supra, 377 N.J.Super. at 188, 871 A.2d 776; N.J.S.A. 2A:23A-13c(5) and 2A:23A-13e(4). Although expanding the court's subject matter review, APDRA limited a party's procedural appeal right by precluding appeal beyond the Chancery Division. N.J.S.A. 2A:23A-18b prescribes, "[t]here shall be no further appeal or review of the [Chancery] judgment or decree."
Mt. Hope, supra, 154 N.J. 141, 712 A.2d 180, involved litigation between parties who had entered a joint venture agreement to develop two separate projects simultaneously. They entered into a settlement and a consent judgment, agreeing to resolve their dispute under APDRA. Following a determination by an umpire in favor of the defendant, the plaintiff filed a motion in the Chancery Division to vacate or modify the award. The Chancery Division affirmed the award, entered judgment, and the plaintiff appealed. We dismissed the appeal, concluding that the parties had waived appeal to the Appellate Division by choosing to resolve the dispute under APDRA. On certification, the Court was faced with the issue of whether the enactment of APDRA infringed on the Court's constitutional authority to grant the right to appeal from a final judgment of the Chancery or Law Division. Holding that APDRA did not violate the doctrine of separation of powers by intruding on the power of the judiciary to promulgate Court Rules, the Court stated:
Just as the constitutional right to appeal may be waived, so may the right granted by R. 2:2-3(a)(1). Additionally, the APDRA, unlike most statutes, is not self-executing. It is a voluntary procedure that only applies if it is invoked in a written agreement. It imposes no restrictions on the Court or any party. Also, because there are so many other avenues to resolve disputes, a party that does not choose the APDRA suffers no adverse consequences. In essence, through the enactment of the APDRA, the Legislature has created a blueprint *978 for those parties who want their dispute settled by APDRA so that they do not have to negotiate a complete set of dispute resolution procedures. Because the Legislature has simply created a voluntary system of dispute resolution procedures, the Legislature has not attempted to override any Court Rule promulgated by this Court, has not intruded on this Court's authority, and has not violated the doctrine of separation of powers.
[Id. at 151, 712 A.2d 180.]
Citing the "strong public policy favoring arbitration as well as other alternative dispute mechanisms," ibid., the Court noted that prohibiting a legislatively created "voluntary system of alternative dispute resolution would be contrary to those principles." Id. at 152, 712 A.2d 180. Notwithstanding the provision of APDRA precluding appeal to the Appellate Division, review by us is permitted in those "rare circumstances" where public policy would trigger the general supervisory power of the Courts. Ibid.
With these principles in mind, we turn to the issues raised on appeal. As we have previously discussed, N.J.A.C. 39:6A-5.1, which requires use of APDRA, has already been determined by us to be authorized by AICRA and properly adopted by the Commissioner. Accordingly, we find no merit in Sabato's contention that adoption of N.J.A.C. 11:3-5.6, insofar as it permits the relaxed standard of review under APDRA, is not authorized by AICRA.
We turn our attention to the propriety of the Law Division judge's decision to vacate the umpire's findings that Allstate acted in bad faith and reduce the attorney's fees incurred in Sabato's successful prosecution of his PIP dispute. Specifically, the judge found that the umpire's decision holding Allstate in bad faith represented an erroneous and prejudicial application of the law to the facts presented. As a separate proposition, the judge's finding respecting bad faith is not reviewable by us under APDRA because, in our view, it does not embrace "a nondelegable special supervisory function" exercisable by the court on review. Mt. Hope, supra, 154 N.J. at 152, 712 A.2d 180. Accordingly, we dismiss Sabato's appeal insofar as he seeks to have us vacate the judge's decision concerning bad faith on the grounds that the judge erred under N.J.A.C. 11:3-5.6 and N.J.S.A. 2A:23-13.
We reach a different conclusion regarding the remedy imposed by the judge, that is, his decision to reduce Sabato's attorney's fees. N.J.A.C. 11:3-5.6(d)3 provides:
The award may include attorney's fees for a successful claimant in an amount consonant with the award and with Rule 1.5 of the Supreme Court's Rules of Professional Conduct.
The award of attorney's fees, whether encompassing bookkeeping records, reasonableness, or the type of fee agreed to, is governed by our Court rules, specifically the Rules of Professional Conduct, RPC 1.5, and Rules of General Application, R. 1:21-6 and R. 1:21-7. Thus, fees come within the exclusive supervisory powers of the Court.
R. 4:42-9(a)6, which provides for attorney's fees for legal services in connection with "an action upon a liability or indemnity policy of insurance in favor of a successful claimant," applies to PIP claims. Maros v. Transamerica Ins. Co., 76 N.J. 572, 579, 388 A.2d 971 (1978); Cirelli v. Ohio Cas. Ins. Co., 72 N.J. 380, 385, 371 A.2d 17 (1977); Estate of Leeman v. Eagle Ins. Co., 309 N.J.Super. 525, 536-37, 707 A.2d 1037 (App.Div.1998) (allowing counsel fees for arbitration provides authority *979 for awarding fees for litigation); Brewster v. Keystone Ins. Co., 238 N.J.Super. 580, 586-87, 570 A.2d 468 (App.Div. 1990); Russell v. Rutgers Cas. Ins. Co., 234 N.J.Super. 175, 181-82, 560 A.2d 708 (App.Div.1989) (allowing attorney's fees for arbitration); Olewinsky v. Aetna Cas. & Sur. Ins. Co., 234 N.J.Super. 429, 431-32, 560 A.2d 1301 (Law Div.1988) (allowing recovery of counsel fees after settling claims, if settlement commenced after litigation and amount of settlement more than initial offer). A successful insured is presumptively entitled to attorney's fees and need not establish that the insurer acted in bad faith or arbitrarily in declining a claim. Liberty Vill. Assocs. v. West American Ins. Co., 308 N.J.Super. 393, 405-406, 706 A.2d 206 (App.Div.) certif. denied, 154 N.J. 609, 713 A.2d 500 (1998).
The second umpire awarded fees predicated on the total time (28.5 hours) expended by Sabato's counsel in pursuit of his client's claim. This necessarily included the first Order to Show Cause and time spent obtaining a remand to a new umpire. In reaching his decision, the umpire expressed his opinion that it did not matter whether the defense tactic was meritless or asserted in bad faith, essentially noting that claimant's counsel spent a "significant amount of time" in his effort to litigate the claim successfully. The judge mistakenly found that the fees awarded by the umpire were based upon the umpire's finding that Allstate had acted in bad faith.
Further, we cannot find anything in the record to explain why the judge presiding over the first Order to Show Cause did not address attorney's fees. He may have decided that the determination of attorney's fees should abide the conclusion of the entire case. Under these circumstances, the failure of the first judge to address the request for attorney's fees does not, as the second judge apparently found, lead to the conclusion that the request was denied.
Counsel's efforts in successfully litigating Sabato's PIP claim necessarily included both time spent before the Law Division and his preparation and argument before both umpires. We, therefore, exercise our prerogative to entertain this appeal because the reasonableness of counsel fees comes within our exclusive supervisory powers. Accordingly, we reverse that portion of the order of August 28, 2004, reducing Sabato's counsel fees and remand to permit a review of the entire time spent by counsel in pursuing his client's claim and determination whether the second umpire's award factually and legally complied with RPC 1.5.
We add the following caveat. Because we base our ruling on our decision to entertain this appeal despite the preclusion in APDRA, we need not address the constitutional issues raised. As we stated in City of Camden v. Whitman, 325 N.J.Super. 236, 243, 738 A.2d 969 (App. Div.1999),
It is ingrained in our case law that courts of this State will not determine constitutional questions unless absolutely imperative to resolve issues in litigation. That imperative level is never reached when the issues presented are non-justiciable. Stated otherwise, courts of this State do not resolve issues that have become moot due to the passage of time or intervening events. (Citations omitted.)
Allstate's contention that Sabato is judicially estopped from asserting that the Arbitration Act should apply is also rendered moot by our decision. In its amicus brief, the Commissioner argues that because N.J.S.A. 39:6A-5.1 provides that "[a]ny PIP dispute ... may be submitted to dispute resolution on the initiative of any party to the dispute," Sabato voluntarily chose to resolve under APDRA. In footnote *980 7 of the Commissioner's brief, the State suggests, "[i]f Sabato wanted to preserve his right to appeal, he could have commenced an action in Superior Court." As we have previously pointed out, N.J.S.A. 39:6A-5.1, which became effective almost six months before the underlying accident, permitted the use of dispute resolution on the initiative of either party. We cannot determine whether Sabato was free to commence a Superior Court action. The Allstate policy is not included in the record and we cannot tell if it required alternative dispute resolution in accordance with either statute applicable at the time.
More importantly, if we assume that the vast majority of insurance policies written today include a provision requiring dispute resolution for PIP claims, then an insured seeking PIP benefits would not have an option to file a Superior Court claim. We have no way of knowing from this record whether there are a sufficient number of insurance policies available that do not exercise the dispute resolution option. Therefore, we are not prepared to hold, nor do we necessarily believe, that an insured's acceptance of a policy requiring submission of PIP claims to dispute resolution carries with it a truly voluntary acceptance of APDRA. We are mindful that, unlike the facts in Mt. Hope, an insured may not be on an equal footing with an insurance carrier, thus enabling a free and voluntary acceptance of APDRA.
Dismissed in part; reversed and remanded in part.
NOTES
[1] N.J.S.A. 2A:24-1 to -11 was repealed by a modified version of the Arbitration Act, N.J.S.A. 2A:23B-1 to -32, which became effective January 1, 2003, and applies to agreements entered into on or after that date. N.J.S.A. 2A:23B-3a.
[2] The current version of the Arbitration Act also preserves the right to appellate review. N.J.S.A. 2A:23B-28.