926 A.2d 372 (2007)
394 N.J. Super. 254
Raymond VAN DUREN, Plaintiff-Respondent,
v.
Leigh RZASA-ORMES, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 16, 2007.
Decided June 29, 2007.
*374 Michael R. Griffinger, Newark, and John A. Schepisi, Englwd Cliffs, argued the cause for appellant (Gibbons, Del Deo, Dolan, Griffinger & Vecchione, and Schepisi & McLaughlin, attorneys; Mr. Griffinger, Brendan McCartney, Kevin McNulty and Mr. Schepisi, on the brief).
Steven R. Klein, Newark, argued the cause for respondent (Cole, Schotz, Meisel, Forman & Leonard, attorneys; Mr. Klein, of counsel and on the brief; Susan M. Usatine, on the brief).
Before Judges LEFELT, PARRILLO and SAPP-PETERSON.
The opinion of the court was delivered by
PARRILLO, J.A.D.
This case presents an issue of first impression concerning the enforceability of a non-appealability clause in an arbitration agreement that forecloses judicial review of an arbitration award. Defendant Leigh Rzasa-Ormes appeals from the November 23, 2005 order of the general equity part that, by way of summary action, Rule 4:67-5, confirmed an arbitration award that effected a division of business property jointly owned with plaintiff Raymond Van Duren. We hold that an arbitration agreement executed before January 1, 2003[1] between two sophisticated business parties, each represented by counsel, that clearly precludes judicial review of an arbitration award beyond the trial court level, is enforceable. We therefore dismiss the appeal because, despite the preclusive language of the agreement, defendant obtained meaningful review of her claims in the Chancery Division and waived any further review by way of appeal here.
By way of background, in 1998 a dispute arose between the parties who were then business partners in twelve automobile dealerships and related real estate holdings, operating under the trade name "Ramsey Auto Group" (Group). In order to resolve the dispute short of litigation, beginning in 1999 the parties discussed settlement options with the Group's corporate counsel, Joseph S. Aboyoun, Esq., who acted as a facilitator. Unable to reach agreement after several months of negotiations, and after each retained separate counsel at Aboyoun's insistence, the parties executed a "Binding Arbitration Agreement" on April 11, 2000, appointing Conrad Roncati, Sr., a person known to both, as the arbitrator, and submitting to him questions of valuation and division *375 of their respective interests in the dealerships and realty.[2] The agreement outlined the procedure to be followed and expressly contemplated use of Aboyoun's services, for which compensation was provided. The parties further agreed that the arbitrator's determination was "final, binding and conclusive" and non-appealable. Specifically, the Finality section included this paragraph:
It is agreed by the parties that the arbitrator's determination of any and all issues arising within this arbitration (the "award") shall be final, binding and conclusive, and not subject to an appeal to any authority in any forum. The arbitration award shall dispose of any and all claims the parties may have against one another, from the beginning of time to the date of the award, whether known or unknown, existing or not existing, accrued or not accrued, asserted or which could have been asserted, all of which such claims shall be released under this arbitration award.
[(emphasis added).]
In the other paragraph of the Finality section, the parties forswore any legal action other than one to confirm or enforce (but not to vacate) the arbitration award.
The ensuing arbitration spanned a period of five years, marked by a series of interim award orders culminating in a final arbitration award on June 21, 2005, which is the subject of this appeal. Although the process was extensive and protracted, there was substantial resolution of the dispute as early as May 26, 2000, when a "separation order" granted defendant exclusive ownership of the 50/50 dealerships and plaintiff exclusive ownership of the 80/20 dealerships. The order also divested defendant of her tenant-in-common interest in RFL Properties (RFL), an entity that owned property upon which several of the dealerships are located, with payment to be made from an upcoming financing based upon appraisals obtained in conjunction with that financing. In this regard, after valuations were completed, the appropriate party would be compensated for any loss sustained in conjunction with the disposition of the 50/50 and 80/20 dealershipsn Valuation was established in the arbitrator's October 12, 2000 order and disposition of RAG Realty, LLC (RAG), which owned three real properties, was deferred along with one valuation issue.
A subsequent order of November 29, 2000, resolved issues of inter-company debt. It was undisputed that the 80/20 dealerships had advanced $1,316,462.22 to the 50/50 dealerships (Interco Debt). Consequently, defendant was ordered to execute a promissory note acknowledging the Interco Debt and to pledge her interest in both the 50/50 dealerships and RAG; and the 50/50 dealerships were ordered to execute joint and several guarantees.
On March 19, 2001, less than one year after commencement of arbitration, the arbitrator entered a decision which incorporated the interim awards, essentially vesting in each of the parties full ownership of the dealerships that each had individually operated since June 2000, and have since been operating over the five-year course of arbitration.[3] (2001 Award). Specifically, *376 defendant was awarded ownership of the 50/50 dealerships, a $1,250,000.000 monetary award, and an assignment by RFL to Ramsey Chevrolet of all interest in the real estate occupied by that dealership. Plaintiff was awarded the 80/20 dealerships, the remainder of RFL, and a monetary award of $925,000.00. The 2001 Award also fixed the Interco Debt, with interest, at $1,384,979.98. After offsetting the parties' other debts to one another, defendant received a net award of $325,000.00, which was credited to the Interco Debt, leaving defendant with a debt of $1,059,979.98 to be paid to the 80/20 dealerships. The 2001 Award also established a sixty day period for the parties to discuss the disposition of RAG, addressed franchise and finance approvals and income tax issues, and ordered the parties to pay all applicable professional fees, among other things.
Shortly thereafter, on June 29, 2001, plaintiff sought to confirm the arbitrator's award and defendant cross-moved for vacatur, complaining about the involvement of the corporate attorney, despite raising no objection to Aboyoun's presence in the four days of hearings that preceded the interim award. No issue was raised concerning the validity of the arbitration agreement and defendant made no claim of fraud, duress, economic compulsion, unequal bargaining power or unconscionability associated with the execution of the contract.
The general equity judge dismissed both applications without prejudice, finding the relief premature because the disposition of RAG remained open, and directed the completion of arbitration with the continued involvement of the corporate attorney, who later withdrew on his own accord. Rather than proceed to conclusion, defendant filed suit in the Chancery Division seeking the removal of the arbitrator, alleging that Roncati had abused his position, made false or misleading statements, conspired to defraud defendant, and was irrevocably biased,[4] claims raised for the first time and not made in her earlier motions for vacatur and for reconsideration. Here again, defendant never questioned the validity of the underlying arbitration agreement. Defendant's complaint was dismissed without prejudice on February 1, 2002. Nevertheless, defendant continued seeking the arbitrator's recusal and in his May 21, 2003 order, the arbitrator denied the request.
Consideration of RAG began in earnest on February 24, 2004, and consumed four days of hearings, ending on October 7, 2004. On February 4, 2005, the arbitrator issued an interim award essentially maintaining the status quo, allowing the parties to each retain their 50% interest, and providing that a real estate management company operate RAG. The final arbitration order of June 21, 2005 appointed the RAG real estate manager and tax consultant.
Pursuant to N.J.S.A. 2A:24-7 and Rule 4:67-5, plaintiff filed a summary action in the Chancery Division to confirm the final award, and defendant moved to vacate it. Defendant alleged that the arbitrator was biased, incompetent, impermissibly delegated duties to the corporate attorney, and fraudulently made material misrepresentations. She also argued that the no-appeal *377 clause of the arbitration agreement was void as against public policy.
Following argument, on November 23, 2005, the general equity judge confirmed the arbitration award, finding that defendant should be bound by her consent to Roncati as the arbitrator, and that her perceived conflicts of interest of the arbitrator were self-created. Moreover, he noted that the parties had implemented the interim orders over the preceding five years, and that it was not possible to return to the status quo as it existed in 2000. He reasoned:
Initially, all the parties cooperatively agreed on . . . the arbitrator. The defendant never objected to the designation of the arbitrator but rather consented to his appointment. Only later, after rulings had been made, and after she had instituted suit against the arbitrator did she claim his being partial. Due to the defendant's suit against the arbitrator, defendant argues a conflict of interest exists and the possibility of bias. Do the defendant's suits against the arbitrator and his son, allegations of incompetence, and alleged delegations of authority to others necessitate vacature of the arbitration award under the statute?
. . . .
The arbitration award should be confirmed and the motion to vacate the award should be dismissed. It seems that the defendant's allegations of impropriety and bias result from the fact that she instituted suit against the arbitrator and his son during the arbitration proceedings. Further, the defendant never had issue with the fact that the arbitrator's son worked for her until the time was ripe to allege that this created the appearance of impropriety. Defendant consented to the appointment of . . . [the] arbitrator, possibly, in part, due to the fact that she had employed his son in the past and even permitted him to reside in her home.
The side issues raised in defendant's arguments are just that-incidental to the basic dissatisfaction with the results. The suits against [the arbitrator] and his son were instituted for no other reason tha[n][t]o be able to point to claimed conflict. This court views this as self created and not to support her position. The selection of the arbitrator himself and his involvement with the corporate attorney were with the knowledge and acquiescence of the parties.
The results here are not within the ambit of the standard for vacation or modification of an award. Therefore, the award will be confirmed. After all, during these five years of arbitration and litigation the parties have already implemented certain aspects of what has come to be the interim and then final award. They could not go back to the status quo that existed in 2000 because that status quo cannot be reconstituted.
Notwithstanding the no-appeal clause, defendant filed a notice of appeal. Plaintiff thereafter moved for summary dismissal pursuant to Rule 2:8-3(b) on the basis of this court's lack of jurisdiction, given defendant's express waiver of the right to appeal. The motion was denied and this appeal follows in which defendant argues that her waiver is unenforceable insofar as she alleges arbitrator bias and other misconduct, claims which she says go to the "fundamental fairness of the procedure itself" and for which she was denied a hearing in the Chancery Division. We disagree.
The right to appeal from final decisions of the Law and Chancery Divisions of the Superior Court is secured in our Constitution, N.J. Const., Art. VI, § 5, ¶ 2, even against legislative interference. N.J. Const., Art. VI, § 2, ¶ 2; Art. VI, § 3, *378 ¶ 3; Art. VI, § 5, ¶¶ 1, 2; Art. XI, § 9, ¶ 3. See also Hager v. Weber, 7 N.J. 201, 205-06, 81 A.2d 155 (1957). Rule 2:2-3(a)(1) implements the constitutional right to appeal. Equally clear, however, is that constitutional rights may be waived. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (allowing waiver of privilege against self-incrimination); Sexton v. Newark Dist. Tel. Co., 84 N.J.L. 85, 101, 86 A. 451 (Sup.Ct.1913), aff'd, 86 N.J.L. 701, 91 A. 1070 (E. & A.1914) (allowing waiver of right to trial by jury). And it is well-settled in this regard that parties may agree to waive appeal rights. Allstate Ins. Co. v. Sabato, 380 N.J.Super. 463, 471-72, 882 A.2d 972 (App.Div.2005). The seminal case is Harmina v. Shay, 101 N.J. Eq. 273, 137 A. 558 (E. & A.1927), in which the Court dismissed an appeal when the parties had agreed that the trial court's findings would be "final". It reasoned:
The general rule, however, is that a party may, by express agreement or stipulation before trial, or judgment, waive his right to appeal, and such agreements or stipulations will be enforced by dismissal of the appeal taken out in violation thereof, or by refusing to pass upon questions covered by the waiver. The intention and agreement to waive the right of appeal must be clear and there must be a sufficient consideration. Such agreements are upheld upon the ground of public policy in encouraging litigants to accept as final decisions of courts of original jurisdiction. 3 Corp. Jur. 661 § 533.

[Id. at 274, 137 A. 558.]
Accord N.J. Mfrs. Ins. Co. v. Travelers Ins. Co., 198 N.J.Super. 9, 12-13, 486 A.2d 339 (App.Div.1984). Such agreements are not contrary to public policy. State v. Gibson, 68 N.J. 499, 511, 348 A.2d 769 (1975).
In N.J. Mfrs. Ins. Co., supra, 198 N.J.Super. at 13, 486 A.2d 339, the court held that "the waiver of appeal provision in the inter-company arbitration agreement authorized by [the PIP statute] is valid." And in Mt. Hope Dev. Assocs. v. Mt. Hope Waterpower Project, L.P., 154 N.J. 141, 151, 712 A.2d 180 (1998), the Court held that a voluntary statutory procedure (the Alternative Procedure for Dispute Resolution Act, N.J.S.A. 2A:23A-1 to -30) allowing parties to waive the right to appeal beyond the Chancery Division did not violate either the court rules or the State Constitution.
Indeed, even without express agreement, such as the one in this case, "[p]arties invoking arbitration to settle a dispute also waive some constitutional rights." Id. at 149, 712 A.2d 180. For example, they waive their right to trial by jury. Ibid.; see also Allgor v. Travelers Ins. Co., 280 N.J.Super. 254, 263, 654 A.2d 1375 (App.Div.1995). Also, because an arbitration award "may be vacated only for fraud, corruption, or similar wrongdoing on the part of the arbitrators," Tretina Printing, Inc. v. Fitzpatrick & Assocs., 135 N.J. 349, 358, 640 A.2d 788 (1994) (quoting Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 548, 610 A.2d 364 (1992) (Wilentz, C.J., concurring)), parties to arbitration also waive, to some extent, their right to appeal. Mt. Hope Dev. Assoc., supra, 154 N.J. at 149, 712 A.2d 180. Thus, except for these and other "rare circumstances" grounded in public policy,[5]id. at 152, 712 A.2d 180; Tretina *379 Printing, supra, 135 N.J. at 364-65, 640 A.2d 788, countervailing public policies favoring arbitration, Faherty v. Faherty, 97 N.J. 99, 105, 477 A.2d 1257 (1984), "finality and limited judicial involvement[,]" Tretina Printing, supra, 135 N.J. at 361, 640 A.2d 788, preclude full judicial review. Indeed, these public policies favoring restricted review of arbitration awards are embodied in the Arbitration Act, N.J.S.A. 2A:24-1 to  11, applicable to this agreement, which limits judicial review to the "narrow grounds" delineated in N.J.S.A. 2A:24-8:
The court shall vacate the award in any of the following cases:
a. Where the award was procured by corruption, fraud or undue means;
b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
[N.J.S.A. 2A:24-8.][6]
See Barcon Assocs. v. Tri-County Asphalt Corp., 86 N.J. 179, 186, 430 A.2d 214 (1981).
Of course, parties, especially like those here who are highly sophisticated businesspeople of relatively equal bargaining position and represented by counsel when they entered into the arbitration agreement, "are free to invoke [the Act's] procedures in toto or subject to agreed[-]upon modifications." Mt. Hope Dev. Assoc., supra, 154 N.J. at 149, 712 A.2d 180; see also Tretina Printing, supra, 135 N.J. at 358, 640 A.2d 788. Thus, even in the context of the Act's highly circumscribed scope of judicial review of arbitration awards, the parties may voluntarily elect to expand that review by providing for such expansion in their contract. Ibid.; see also N.J.S.A. 2A:23B-4(c). By the same token, under the Act in effect at the time of the agreement in issue,[7] and by *380 parity of reasoning, the parties may privately contract to further constrict the scope of limited judicial scrutiny by, for instance, eliminating the added layer of appellate review altogether. The only caveat is that "their intention to do so must be clear and unequivocal." MACTEC, Inc. v. Gorelick, 427 F.3d 821, 828 (10th Cir. 2005) (quoting Bowen v. Amoco Pipeline Co., 254 F.3d 925, 931 (10th Cir.2001)), cert. denied, 547 U.S. 1040, 126 S.Ct. 1622, 164 L.Ed.2d 334 (2006); see also Dep't of Air Force v. Fed. Labor Relations Auth., 775 F.2d 727, 733 (6th Cir.1985); Aerojet-Gen. Corp. v. Am. Arbitration Ass'n, 478 F.2d 248, 251-52 (9th Cir.1973). In this case, had the parties desired to preserve their right to appeal, they could have inserted a provision into their post-dispute arbitration agreement reserving that right and delineating the scope and extent of any appeal. They did not do so. Instead, the parties expressly and unequivocally foreclosed their right not only to appeal, but to initial judicial review at the trial level.
To be sure, not all private restrictions on judicial review of an arbitrator's award will be enforceable. MACTEC, Inc., supra, 427 F.3d at 829; Hoeft v. MVL Group, Inc., 343 F.3d 57, 63-65 (2d Cir. 2003). There are, no doubt "rare circumstances" grounded in public policy that might otherwise compel limited judicial review. Accord Mt. Hope Dev. Assoc., supra, 154 N.J. at 152, 712 A.2d 180; Tretina Printing, supra, 135 N.J. at 364-65, 640 A.2d 788. We are persuaded that the complete elimination of judicial review at the initial trial level represents one such circumstance. In this regard, we perceive a fundamental difference between, on the one hand, a non-appealability clause applied to a trial court's review, which effectively eliminates judicial oversight entirely of an arbitrator's award, and on the other hand, a non-appealability clause applied only to an appellate court's review of the trial court's judgment confirming or vacating an arbitrator's award. Cf. Allstate Ins. Co. v. Sabato, supra, 380 N.J.Super. at 471, 882 A.2d 972.
In Hoeft, supra, the parties' agreement provided that the arbitrator's decision was "not . . . subject to any type of review or appeal whatsoever." 343 F.3d at 63. After the arbitrator found for the plaintiff, the defendant successfully persuaded the district court to vacate the award on the grounds that the arbitrator manifestly disregarded the law. Id. at 59-62. On appeal, the plaintiff argued that the non-appealability clause should have barred the district court from examining the substance of the arbitrator's decision because the parties had expressly agreed that the arbitrator's award would not be subject to any sort of judicial review. Id. at 63. In rejecting this argument, the Second Circuit held the disputed clause unenforceable reasoning that a non-appealability provision cannot deprive the federal courts of the ability to apply the standards set forth in the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to -16, in particular 9 U.S.C. § 10(a) (2000), id. at 64, which is virtually identical to the New Jersey Act, N.J.S.A. 2A:24-8.[8]
*381 Unlike Hoeft, MACTEC, Inc. involved an arbitration agreement that preserved federal district court review under 9 U.S.C. § 10(a)(3), but foreclosed appeal thereafter. 427 F.3d at 829. In holding "that a non-appealability clause in an arbitration agreement that forecloses judicial review of an arbitration award beyond the district court level is enforceable[,]" id. at 824, 830, the court reasoned:
The agreement here preserves district court review under 9 U.S.C. § 10(a)(3), and while an unsatisfied defendant would not be able to appeal a district court order denying his application to vacate the award, so too would an unsatisfied plaintiff be unable to contest a district court's vacatur of an arbitration award in plaintiff's favor. From the parties' perspective, then, the risks of a negative outcome resulting from the non-appealability clause are borne equally by both sides. What we have here is something less than full judicial review of the arbitrator's decision; but we do not have a situation in which there is no judicial review at all, nor a situation where a court is asked to enforce an arbitration award without being given the authority to review compliance of that award with the FAA. It is, in a sense, a compromise whereby the litigants trade the risk of protracted appellate review for a one-shot opportunity before the district court.
[Id. at 829-30 (footnote omitted).]
We find this reasoning persuasive. An agreement that prohibits any judicial review effectively deprives a state court of its ability to apply the standards set forth in N.J.S.A. 2A:24-8, which themselves embody legislative and judicial determinations as to the appropriate level and scope of review. Such a clause in an arbitration agreement that also permits judicial enforcement of an arbitration award violates public policy not because it precludes appellate court review, but because it allows for no judicial scrutiny whatsoever, rendering a trial court's confirmatory action a mere rubber stamp of the arbitrator's award and lending the award the imprimatur of judicial legitimacy even though the arbitrator's conduct may fall within the narrow parameters for vacatur. In other words, the offending clause asks a trial court to enforce an arbitration award without also retaining the right to review and abrogate the award where violative of public policy. In contrast, such public policy concerns are simply not implicated by a non-appealability provision that affects only the appellate court's ability to consider the judgment of the trial court that confirms or vacates an arbitrator's award. After all, courts routinely enforce agreements that waive the right to appellate review over trial court decisions. MACTEC, Inc., supra, 427 F.3d at 830; see also 15A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 3901 at 18-19 (2d ed.1992). Likewise, we conclude, as did the court in MACTEC, Inc., that the clearly worded and unambiguous non-appealability clause in the arbitration agreement in issue, executed between two parties of equal bargaining power that forecloses judicial review of an arbitration award beyond the trial court level is enforceable.
Consequently, although that portion of the arbitration agreement under consideration that precludes trial court review is void as against public policy, we find the agreement otherwise valid and enforceable to the extent it forecloses appellate court review. See Muhammad, supra, 189 N.J. at 26, 912 A.2d 88 (holding that although *382 the class-arbitration waivers are unconscionable, they are severable from the remainder of the arbitration agreement, which is otherwise enforceable); see also Naseef v. Cord, Inc., 90 N.J.Super. 135, 143, 216 A.2d 413 (App.Div.) (stating "[i]t is true that if a contract contains an illegal provision, if such provision is severable, the courts will enforce the remainder of the contract after excising the illegal position."), aff'd, 48 N.J. 317, 225 A.2d 343 (1966); cf. Karlin v. Weinberg, 77 N.J. 408, 415-16, 424, 390 A.2d 1161 (1978) (authorizing the trial court on remand to limit the geographic scope of a non-compete agreement as necessary to satisfy public policy).
We further find that despite the overbreadth of the non-appealability clause in this case, defendant actually obtained meaningful judicial review. The general equity judge did not view the agreement as either requiring confirmation or relinquishing the court's right to abrogate the arbitrator's award should the facts so warrant. On the contrary, the judge, who presided over the matter for five years and was intimately familiar with the dispute, closely examined the substance of the arbitrator's decision, carefully considered and weighed defendant's claims, and in an articulate and thoughtful decision, found no recognizable grounds to vacate the award. That disposition by the general equity judge should have ended the matter as the parties themselves, by knowing and voluntary agreement, deemed it to be final, binding and non-appealable.
Yet despite their clear intent, plainly and unequivocally stated, defendant has appealed, urging the same grounds for vacatur advanced and rejected below, and alleging none of the "rare circumstances" grounded in public policy  such as bias or misconduct of the trial judge or unconscionability in the very formation of the contract  that might otherwise compel us to exercise limited appellate view. Accordingly, we lack jurisdiction over defendant's appeal from the Chancery Division's denial of her application to vacate the arbitration award and therefore dismiss the appeal.
Appeal dismissed.
NOTES
[1] An arbitration agreement made before New Jersey's Arbitration Act (Act) was amended, effective January 1, 2003, N.J.S.A. 2A:23B-1 to -32, is governed by the predecessor Act (N.J.S.A. 2A:24-1 to -11), N.J.S.A. 2A:23B-3(a); N.J.S.A. 2A:23B-31 (L. 2003, c. 95, §§ 3(a) and 31, effective January 1, 2003), which continues to govern arbitration agreements in the collective bargaining context. See N.J.S.A. 2A:24-1.1; see also Kimm v. Blisset, LLC, 388 N.J.Super. 14, 28, 905 A.2d 887 (App.Div.2006), certif. denied, 189 N.J. 428, 915 A.2d 1051 (2007). Because the arbitration agreement at issue in this appeal was executed prior to January 1, 2003, it is governed by the predecessor Act.
[2] At the time, plaintiff and defendant, themselves or through family members, owned certain dealerships 80/20 respectively, and other dealerships 50/50. Some of the real properties were owned by a partnership or outright by a dealership, and still others by a limited liability corporation (LLC). Apparently, even before arbitration commenced, the parties generally agreed that defendant would retain full ownership of the 50/50 dealerships and plaintiff would retain full ownership of the 80/20 dealerships.
[3] Indeed, defendant exercised a lease option conferred on her by the March 19, 2001 award, for the benefit of Ramsey Chevrolet, a dealership of which she was awarded full ownership.
[4] Defendant based these allegations, in part, on the fact that she had filed a lawsuit on November 9, 2001, against the arbitrator's son, Conrad Roncati, Jr., on an unrelated contract matter. The lawsuit was eventually settled on December 1, 2003.
[5] See, e.g., Muhammad v. County Bank of Rehoboth Beach, 189 N.J. 1, 12-13, 18, 912 A.2d 88 (2006) (holding that a court rather than an arbitrator must decide whether an agreement to arbitrate is valid; and that, as a matter of first impression, a class-arbitration waiver contained in an arbitration agreement in a payday loan adhesion contract was unconscionable due to the public interest at stake); Delta Funding Corp. v. Harris, 189 N.J. 28, 46-47, 912 A.2d 104 (2006) (holding that a class-arbitration waiver in an arbitration clause of a mortgage loan contract between a consumer and sub-prime lender was not unconscionable); Faherty v. Faherty, 97 N.J. 99, 109, 477 A.2d 1257 (1984) (holding that "whenever the validity of an arbitration award affecting child support is questioned on the grounds that it does not provide adequate protection for the child, the trial court should conduct a special review of the award" because the courts stand as parens patriae); Commc'ns Workers, Local 1087 v. Monmouth County Bd. of Soc. Servs., 96 N.J. 442, 450-51, 476 A.2d 777 (1984) (courts may review challenges to public-sector arbitration on the basis of a mistake of law because "public policy demands that inherent in the arbitrator's guidelines are the public interest, welfare and other pertinent statutory criteria").
[6] See also N.J.S.A. 2A:23B-23a(1)-(6).
[7] Under the amended Act, N.J.S.A. 2A:23B-1 to -32, which adopted a modified version of the Uniform Arbitration Act, Wein v. Morris, 388 N.J.Super. 640, 654 n. 5, 909 A.2d 1186 (App.Div.2006), certif. granted, 190 N.J. 254, 919 A.2d 848 (2007), parties to an arbitration agreement executed before the controversy to be arbitrated arises may not waive the requirement of N.J.S.A. 2A:23B-28a(3), which states that an appeal may be taken from an order confirming or denying confirmation of an arbitration award. N.J.S.A. 2A:23B-4(b)1. This non-waivability clause is designed to ensure that fundamental fairness to the parties will be preserved, particularly in those instances where one party may have significantly less bargaining power than another. Unif. Arbitration Act, prefatory note, 7 U.L.A. 2-3 (2000). The new Act, however, does not bar waiver of appellate review where, as here, the arbitration agreement is executed after the controversy that is the subject of the arbitration agreement arises. Thus, in the post-dispute context, the parties are given more autonomy to agree to provisions different from those required under the Act.
[8] See Carmona v. Resorts Int'l Hotel, 189 N.J. 354, 377, 915 A.2d 518 (2007) (finding support in federal cases appropriate where N.J.R.E. 801(c) is identical to its federal counterpart, Fed.R.Evid. 801(c)); see also Delta Funding Corp. v. Harris, 189 N.J. 28, 39, 912 A.2d 104 (2006) (noting that the FAA and NJAA have similar philosophies that favor arbitration agreements).