14 A.3d 760 (2011)
418 N.J. Super. 499
MID-ATLANTIC SOLAR ENERGY INDUSTRIES ASSOCIATION, Appellant,
v.
Chris CHRISTIE, Governor of the State of New Jersey, Respondent. *761 
In re Comprehensive Energy Efficiency and Renewable Energy Resource Analysis for 2009-2012, Revised 2010 Budgets.
In re Comprehensive Energy Efficiency and Renewable Energy Resource Analysis for 2009-2012, Revised 2010 Budgets (Second Revision).
In Re P.L. 2010, Ch. 19, Application of Clean Energy Funds to General Fund for Fiscal Year 2010.
Nos. A-3374-09T4, A-4047-09T4, A-5948-09T4, A-5949-09T4.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 2010 in A-3374-09. Argued December 7, 2010 in A-4047-09, A-5948-09, A-5949-09.
Decided March 4, 2011.
Peter D. Dickson argued the cause for appellant (Potter and Dickson, attorneys; Mr. Dickson and R. William Potter, Princeton, on the briefs).
Jean P. Reilly, Deputy Attorney General, argued the cause for respondent (Paula T. Dow, Attorney General, attorney; Nancy Kaplen, Susan K. Fischer and John P. Bender, Assistant Attorneys General, of counsel; Ms. Reilly and Cynthia L. Holland, Deputy Attorneys General, on the briefs).
Before Judges PARRILLO, YANNOTTI and SKILLMAN.
The opinion of the court was delivered by
*762 SKILLMAN, J.A.D. (retired and temporarily assigned on recall).
On June 29, 2010, the Governor signed into law a Supplemental Appropriations Act for the 2009-10 State fiscal year. L. 2010, c. 19. Section six of this Appropriations Act provides:
Notwithstanding any provision of law or regulation to the contrary, there may be transferred from the Clean Energy Fund to the General Fund as State revenue an amount not in excess of $158,000,000, subject to the approval of the Director of the Division of Budget and Accounting.
The lead appeal addressed by this opinion challenges the validity of this provision.
We reject this challenge and conclude that section six of the 2010 Supplemental Appropriations Act is valid. This conclusion moots the other three appeals before us, which challenged interim executive actions relating to the same $158,000,000 in the Clean Energy Fund that the Supplemental Appropriations Act authorized to be transferred to the General Fund.

I.
Before setting forth our reasons for upholding the validity of the authorization in the 2010 Supplemental Appropriations Act for the transfer of Clean Energy Funds, we first describe the legislation under which those funds are collected, the manner in which those funds have been administered in recent years, and the executive actions preceding enactment of this Appropriations Act.
Clean Energy Funds are collected under a section of the Electric Discount and Energy Competition Act (EDECA), N.J.S.A. 48:3-49 to -98.1, enacted in 1999, L. 1999, c. 23, which authorizes electric and gas public utilities to impose a "societal benefits charge" upon their customers to recover certain costs enumerated in this section.[1]N.J.S.A. 48:3-60(a). The Board of Public Utilities (BPU) determines the amount of the societal benefits charge each utility may collect. Ibid. A utility is authorized to use the money collected through this charge for specific legislatively prescribed purposes, including social programs, N.J.S.A. 48:3-60(a)(1); nuclear power plant decommissioning, N.J.S.A. 48:3-60(a)(2); manufactured gas plant remediation, N.J.S.A. 48:3-60(a)(4); and consumer education, N.J.S.A. 48:3-60(a)(5).
In addition to these purposes, N.J.S.A. 48:3-60(a)(3) authorizes the use of money collected from the societal benefits charge for the "costs of demand side management programs," which consist of "energy efficiency" and "renewable energy" programs. The Legislature directed the BPU to play a more active role in determining the allocation of money for these purposes than for the other purposes for which money collected under the societal benefits charge may be used. Specifically, N.J.S.A. 48:3-60(a)(3) requires the BPU to undertake, in consultation with the Department of Environmental Protection (DEP), a "comprehensive resource analysis of energy programs" to determine "the appropriate level of funding for energy efficiency and . . . renewable energy programs."
In the years immediately following enactment of the EDECA, the money collected under the societal benefits charge that *763 the BPU allocated to energy efficiency and renewable energy programs, like money allocated to the other purposes authorized by N.J.S.A. 48:3-60(a), was expended directly by the utilities. However, in 2003, the BPU decided to establish an independent fund into which money from the societal benefits charge allocated for these purposes would be deposited, which became known as the Clean Energy Fund at issue in this appeal. Although the BPU originally deposited the money in the Clean Energy Fund with a private fiscal agent, the BPU later transferred this money into the State Treasury at the direction of the Treasury Department.
In 2007, the Legislature enacted an amendment to the EDECA, L. 2007, c. 340, § 13(a)(3), which provides that the BPU "may provide funding for energy efficiency, conservation, and renewable energy improvements through the societal benefits charge" and other statutory assessments. N.J.S.A. 48:3-98.1(a)(3). Under the authority of this amendment, the BPU has deposited not only money collected from the societal benefits charge but also money from other sources into the Clean Energy Fund.
Notwithstanding the limitations the EDECA places upon the use of the money collected under the societal benefits charge, the Legislature has repeatedly included provisions in Appropriations Acts authorizing distributions from the Clean Energy Fund that are not provided by the EDECA, including transfers into the General Fund. In the 2008 Appropriations Act, the Legislature appropriated $10 million from the Clean Energy Fund to fund various energy efficiency projects in State facilities and $2 million to fund an "Ocean/Wind Power Ecological Baseline Study." L. 2007, c. 111. The Legislature also transferred $10 million from the Clean Energy Fund into the General Fund. Ibid. In the 2009 Appropriations Act, the Legislature appropriated $6 million from the Clean Energy Fund to fund the installation of energy efficiency projects in certain state facilities. L. 2008, c. 35. The Legislature also transferred $10 million from the Clean Energy Fund into the General Fund. Ibid. In the original 2010 Appropriations Act, L. 2009, c. 68, the Legislature again transferred $10 million from the Clean Energy Fund into the General Fund. Thus, the section of the 2010 Supplemental Appropriations Act authorizing the transfer of $158 million of Clean Energy Funds into the General Fund constituted a continuation of a legislative practice of authorizing or mandating specific distributions from the Clean Energy Fund, including transfers into the General Fund, through Appropriations Acts.[2]
On February 11, 2010, the Governor issued Executive Order 14, 42 N.J.R. 660(b), 661 (March 15, 2010), which ordered the Director of the Division of Budget and Accounting to "identify and place into reserve items of appropriation . . . in an amount sufficient to ensure that the State budget is in balance." Thereafter, the Director placed $158 million from the Clean Energy Fund into reserve.
In conformity with Executive Order 14 and the implementing action of the Director of the Division of Budget and Accounting, on April 21, 2010, the BPU adopted a revised 2010 budget for distributions from the Clean Energy Fund that eliminated the $158 million reserved under Executive Order 14. On June 21, 2010, the BPU adopted another revision to its 2010 budget for distributions from the *764 Clean Energy Fund that changed the specific allocations of certain funds, but continued the $158 million reduction in distributions required to comply with Executive Order 14 and the Director's implementing action.
Appellant Mid-Atlantic Solar Energy Association (Mid-Atlantic), a trade association representing the solar industry, filed three separate notices of appeal challenging Executive Order 14 and the April 14 and June 21, 2010 revisions of the BPU's 2010 budget for distributions from the Clean Energy Fund.
On June 29, 2010, the Governor signed into law the 2010 Supplemental Appropriations Act, which authorized the transfer of $158 million from the Clean Energy Fund into the General Fund.
Mid-Atlantic filed another notice of appeal challenging the validity of this legislative enactment.[3] We now consolidate Mid-Atlantic's three appeals challenging the reservation of the $158 million in Clean Energy Funds and the fourth appeal challenging the legislative authorization for the transfer of that amount into the General Fund.
We conclude that the section of the 2010 Supplemental Appropriations Act that resulted in the transfer of $158 million of Clean Energy Funds into the General Fund is valid. This conclusion moots Mid-Atlantic's other three appeals.

II.
There is no doubt that N.J.S.A. 48:3-60(a), which authorizes the imposition of a social benefits charge upon electric and gas public utility customers, contemplated that monies collected from this charge would be used for the purposes set forth in that statute. The question presented by this appeal is whether the Legislature has the power to authorize another use of the portion of those monies deposited in the Clean Energy Fund, specifically their transfer into the General Fund by means of an Appropriations Act.
Our courts have long recognized that the Legislature has the authority to change or suspend the operation of its prior enactments through an Appropriations Act. See In re Boyan, 127 N.J. 266, 268-69, 604 A.2d 98 (1992); City of Camden v. Byrne, supra, 82 N.J. at 153-55, 411 A.2d 462; County of Camden v. Waldman, 292 N.J.Super. 268, 290-92, 678 A.2d 1101 (App.Div.1996), certif. denied, 149 N.J. 140, 693 A.2d 109 (1997); see also State v. Cannon, 128 N.J. 546, 568, 608 A.2d 341 (1992); Karcher v. Kean, 97 N.J. 483, 504-07, 479 A.2d 403 (1984). In City of Camden v. Byrne, the Court stated:
[A] definite legislative intent as reflected in the general appropriation laws necessarily supersedes any previously expressed legislative desires at least for the duration of the particular appropriation act. The earlier statutes cannot coexist with the enacted appropriation and, consequently, must be deemed to be suspended by adoption of the later appropriation acts.
[82 N.J. at 154, 411 A.2d 462.]
Section six of the 2010 Supplemental Appropriations Act constituted an exercise *765 of this legislative authority to "supersede[]" the "previously expressed legislative desire[]" to limit the uses of money collected under the social benefits charge to the purposes set forth in N.J.S.A. 48:3-60(a) and instead transfer a portion of that money into the General Fund. Thus, this section of the Supplemental Appropriations Act had the same operative effect for the 2009-10 State fiscal year as an amendment to N.J.S.A. 48:3-60(a) to authorize appropriation of money collected thereunder for any purpose the Legislature might determine rather than solely the purposes originally set forth in this statute.
Mid-Atlantic argues at great length that the Legislature lacked the authority to transfer money in the Clean Energy Fund into the General Fund because that money is "private money." We reject this argument. The money in the Clean Energy Fund is collected from utility customers under the authority of N.J.S.A. 48:3-60(a), and the amount of the charge is determined by the BPU, which is a state agency. The BPU determines the specific purposes to which the money in the Clean Energy Fund is allocated, N.J.S.A. 48:3-60(a)(3), and the BPU administers the Fund under the auspices of the Department of Treasury. Moreover, the money in the Clean Energy Fund is deposited into the State Treasury in conformity with N.J.S.A. 52:18-29 and appropriated for its designated purposes through section two of the Annual Appropriations Acts, which provide in pertinent part: "All dedicated funds are hereby appropriated for their dedicated purposes." L. 2010, c. 35, § 2; L. 2009, c. 68; § 2; L. 2008, c. 35, § 2. Consequently, if the characterization of the money in the Clean Energy Fund as "public" were a prerequisite to upholding the Legislature's authority to transfer a portion of it into the General Fund through an Appropriations Act, the pervasive role of the Legislature and the BPU in authorizing this charge and determining the uses of the money collected thereunder would warrant this characterization.
In any event, we do not view the characterization of the money collected under social benefits charge as "public" or "private" to be dispositive of the Legislature's authority to authorize a transfer of some of that money into the General Fund. However this money may be characterized, the fact that the Legislature has authorized its collection and directed the purposes to which it may be allocated means that the Legislature retains the authority to change those permitted purposes. City of Camden v. Byrne, supra, 82 N.J. at 153-55, 411 A.2d 462. Moreover, the authorization to transfer money into the General Fund is directly related to one of the basic purposes of an Annual Appropriations Act, which is to assure that there is adequate money to fund the appropriations provided thereunder. See Karcher v. Kean, supra, 97 N.J. at 488-89, 479 A.2d 403. Therefore, this authorization was a proper subject for the Legislature to address through an Appropriations Act. See id. at 504-07, 479 A.2d 403.
For these reasons, we uphold the validity of section six of the 2010 Supplemental Appropriations Act authorizing the transfer of up to $158 million of Clean Energy Funds into the General Fund.

III.
This moots the other three appeals brought by Mid-Atlantic. By its express terms, Executive Order 14 was only effective "until such time as a General Appropriations Act for Fiscal year 2011 is enacted." 42 N.J.R. 660(b), 661 (March 5, 2010). Since that Appropriations Act has now been enacted, and in any event, section six of the 2010 Supplemental Appropriations Act for Fiscal Year 2010, which *766 authorized the transfer of the $158 million reserved by Executive Order 14, superseded that Executive Order, Mid-Atlantic's appeal challenging Executive Order 14 is moot.
Similarly, the BPU's April 14 and June 21, 2010 revisions of its budget for distributions from the Clean Energy Fund were adopted to implement the reservation by Executive Order 14 of the $158 million in Clean Energy Funds. Since we have now upheld the Legislature's transfer of that $158 million into the General Fund, Mid-Atlantic's challenges to the BPU's revisions of its Clean Energy Fund budget to reflect that reduction are moot.
Finally, we decline to consider Mid-Atlantic's argument that the BPU's June 21, 2010 revision of the Clean Energy Fund budget is invalid because of the BPU's alleged failure to consult with the DEP, as required by N.J.S.A. 48:3-60(a)(3). This argument was raised for the first time in a two-sentence paragraph at the end of Mid-Atlantic's brief without a separate point heading, in violation of Rule 2:6-2(a)(5). This cursory discussion did not properly present the issue for our consideration or afford an adequate opportunity for the BPU to respond. Mid-Atlantic then explained the argument in greater detail in a reply brief, to which the BPU had no opportunity to respond. This kind of presentation of an issue for appellate review is improper. See N.J. Citizens Underwriting Reciprocal Exch. v. Kieran Collins, D.C., LLC, 399 N.J.Super. 40, 50, 942 A.2d 864 (App.Div.), certif. denied, 196 N.J. 344, 953 A.2d 763 (2008). Moreover, since it is undisputed that the BPU discharged its obligation to consult with the DEP in the preparation of its original and first revised 2010 Clean Energy Fund budgets, this is not an issue of general public importance that would warrant our overlooking the improper form in which it was raised.
Accordingly, in the In re P.L. 2010, Ch. 19, Application of Clean Energy Funds to General Fund for Fiscal Year 2010 appeal, we affirm the validity of section six of the 2010 Supplemental Appropriation Act authorizing the transfer of $158 million into the General Fund. We dismiss the other three appeals as moot.
NOTES
[1] The primary purpose of the EDECA was to deregulate and restructure electric utilities in order to foster competition for energy. N.J.S.A. 48:3-50(b)(1); see In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, 167 N.J. 377, 383 n. 1, 771 A.2d 1163, cert. denied, 534 U.S. 813, 122 S.Ct. 37, 151 L.Ed.2d 11 (2001). However, this appeal only involves the section of the EDECA that authorizes imposition of a societal benefits charge.
[2] We note the Legislature again authorized a transfer of $10 million from the Clean Energy Fund into the General Fund in the 2011 Annual Appropriations Act. L. 2010, c. 35. Appellant apparently has not challenged this legislative action.
[3] The BPU argues that this appeal is a challenge to the validity of a legislative enactment, which should have been brought in the Law Division. See City of Camden v. Byrne, 82 N.J. 133, 142-44, 411 A.2d 462 (1980). However, even if such a challenge ordinarily should be brought in the Law Division, we elect to exercise our original jurisdiction and decide the legal issue presented by the appeal. See R. 2:10-5; City of Camden v. Whitman, 325 N.J.Super. 236, 243, 738 A.2d 969 (App.Div. 1999); see also Vas v. Roberts, 418 N.J.Super. 509, 523-25, 14 A.3d 766 (App.Div.2011).