**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1162-16T1

JOHN P. KEEGAN,

    Plaintiff,

v.

TOWN OF KEARNY,

    Defendant/Third-Party
    Plaintiff-Appellant,

v.

NEW JERSEY SPORTS AND EXPOSITION
AUTHORITY (formerly the NEW JERSEY
MEADOWLANDS COMMISSION),

    Third-Party Defendant-Respondent.

_____

Submitted October 11, 2017 — Decided July 26, 2018

Before Judges Fuentes, Koblitz and Manahan.

On appeal from Superior Court of New Jersey,
Law Division, Hudson County, Docket No. L-
3330-15.

Castano Quigley, LLC, attorney for appellant
(Gregory J. Castano, Jr. on the brief).

Lowenstein Sandler, LLP, attorney for
respondent (James E. Stewart and Rachel K.
Warren, on the brief).

PER CURIAM

The Keegan Landfill was an inoperative landfill on land owned by both the Town of Kearny (Town) and John P. Keegan. Because the landfill was left uncapped after it ceased operation, it leaked heavy metals and pollutants into nearby streams and marshlands. The New Jersey Sports and Exposition Authority (NJSEA), formerly the New Jersey Meadowlands Commission, entered into an agreement with the Town, through which the NJSEA accepted sole financial responsibility for capping and remediating the landfill and marshlands. The NJSEA also agreed to acquire title to Keegan's property, remediate his portion of the property, and pursue cost-recovery actions against him. In exchange, the NJSEA was granted the right to operate the landfill for a term of years, retaining all rights to recoup the cost of remediation.

The NJSEA fulfilled all of its contractual obligations. It remediated and capped the landfill, condemned Keegan's property, and recovered nearly $900,000 from Keegan in a cost-recovery action under the New Jersey Spill Compensation and Control Act (the Spill Act), N.J.S.A. 58:10-23.11 to -23.24. Keegan thereafter filed suit against the Town seeking contribution. Because the Town owned significant portions of the land, Keegan argued it should bear partial liability for the cost of remediation. In response, the Town filed a third-party complaint against the NJSEA,

contending the lease agreement provided that the Town would bear "no expenses whatsoever" from the remediation plan.

The NJSEA moved for summary judgment to dismiss the Town's third-party action seeking contractual indemnification. The Town cross-moved seeking the enforcement of this alleged hold harmless clause in the lease agreement with respect to the cost of remediation. The matter came for oral argument before Judge Lisa Rose. After considering the arguments of counsel, Judge Rose granted the NJSEA's motion, denied the Town's cross-motion and dismissed with prejudice the third-party complaint against the NJSEA.

In this appeal, the Town argues the motion judge misconstrued several provisions in the lease agreement that show that the NJSEA agreed to assume "sole responsibility" for the cost of remediation, without any financial assistance or contribution from the Town. Because the Law Division decided this issue as a matter of law, our review is de novo. Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013). We will apply the same standards used by the motion judge. Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). After reviewing the competent evidential materials submitted by the parties, we conclude there are no genuine issues of material fact in dispute, and the matter is ripe for summary judgment. Ibid. Viewing the undisputed material facts in the light most favorable to the Town

pursuant to Rule 4:46-2(c), we conclude Judge Rose correctly dismissed the Town's third-party complaint against the NJSEA as a matter of law.

After carefully reviewing the record presented by the parties and canvassing the relevant case law related to contractual indemnification, Judge Rose found that "none of the provisions of the lease agreement [relied on by the Town] meet the strict requirements of New Jersey law with respect to indemnification provisions and contracts." We agree and affirm.

This is the second time this court has reviewed a decision from the Law Division that addressed who should bear the cost of remediating the Keegan Landfill. In an unpublished opinion, this court reviewed the Law Division's decision, made after a bench trial, that found Keegan was not liable for the cost of remediation under the Spill Act, or the Sanitary Landfill Facility Closure and Contingency Act (the Closure Act), N.J.S.A. 13:1E-100 to -227. N.J. Meadowlands Comm'n v. Keegan, No. A-6090-10 (App. Div. 2013) (slip op. at 2). Both parties appealed, challenging "the rulings on liability favorable to the other, and both contend[ed] the court erred in fixing Keegan's share of the costs." Ibid.

This court concluded Keegan was liable under the Closure Act, reversed the judgment of the trial court, and remanded the matter for reconsideration of damages. This court explained:

> Because the evidence establishes that Keegan acquired the property knowing it was a former landfill from his father, was involved albeit tangentially in its operation, had reason to know its improper closure presented the potential environmental problems, and held the property for speculation for several decades, we conclude that the court erred in finding he was not liable under the Closure Act. Accordingly, we remand for reconsideration of the costs that the court disallowed in fashioning an award designed to do nothing more than avoid unjust enrichment.
>
> [Id. at 3-4.]

In reaching this conclusion, this court reviewed the lengthy history of the Keegan Landfill and its environmental impact. In lieu of restating this history, we incorporate it by reference here. Id. at 4 to 16.

On June 14, 2005, the Town agreed to lease the landfill to the NJSEA for a ten-year term commencing on June 15, 2005 and ending December 15, 2015. The lease contains eleven unnumbered prefatory or "WHEREAS" clauses. The Town focuses on the following prefatory clause as evidence of the parties' intent and expectation as to who would bear the cost of remediation:

> WHEREAS, as part of this project the [NJSEA][1] will assume sole responsibility, without financial assistance or contribution from Kearny, for the design and implementation of a closure plan approved by the Department of Environmental Protection ("DEP")[.]

---

[1] As noted earlier, the lease agreement was signed by the Town and the NJSEA's predecessor, the New Jersey Meadowlands Commission.

The lease agreement contained thirty numbered and titled sections, many of which were further subdivided into multiple subsections.  Section 4 is titled "Other Property Interests." Subsection 4A states, in relevant part, that the NJSEA "shall be responsible, at its sole cost and expense, for acquiring and terminating any leasehold in the Demised Premises . . . held by Hudson Meadowlands Urban Renewal Development Corporation . . . ."

Subsection 4B states, in relevant part:

> The [NJSEA] shall also be responsible, at its sole cost and expense, for acquiring fee simple title to and any other interests in property necessary for it to conduct Disposal Operations and provide for the closure of portions of the Keegan Landfill that are not under the ownership of the Town. Specifically, the [NJSEA] shall acquire that . . . which shall include . . . the property believed to be owned by John Keegan, Esq. . . . consisting of 3.342 acres, more or less ("the Retained Properties") . . . .

Finally, section 11, titled "No Cost to Town," states:

> It is the intention of the parties that the Town shall have no expenses whatsoever with respect to the Demised Premises or the Retained Premises during the Lease term and the [NJSEA] agrees that it will provide, at its sole cost and expense, for the closure of the Keegan Landfill.  During the Lease term, the Rent and Host Community Payments shall be absolutely "net" to the Town.

These three sections of the lease agreement are the core facts the Town cites to support its argument that the NJSEA agreed

to indemnify it against any claims related to the cost of remediating the Keegan Landfill. Judge Rose found none of these sections supported the Town's argument. Judge Rose observed that none of these lease provisions relied on by the Town used the term "indemnity," which she noted was a term of contract law that requires unambiguous language to ensure there is mutual assent.

Citing Kutzin v. Pirnie, 124 N.J. 500, 507 (1991), Judge Rose emphasized that "the governing language" of a contract should be unambiguous, clear, and leave no doubt as to its meaning. The absence of any reference to "indemnity" in the lease is a material factor that undercuts the Town's argument because "indemnification agreements are interpreted in accordance with the rules governing contracts generally, ambiguous clauses should be construed strictly against the indemnitee." Mantilla v. Nc Mall Assocs., 167 N.J. 262, 269 (2001) (quoting E.I. duPont deNemours & Cent. Motor Parts Corp. v. E.I. duPont deNemours & Co., 251 N.J. Super. 5, 13 (App. Div. 1991)).[2]

The NJSEA also argued against the Town's claims based on "common law and statutory contribution." In rejecting the Town's

---

[2] Judge Rose also addressed and rejected the Town's argument based on "implied indemnification." Because the Town has not made this argument in this appeal, we will not address it. See Mid-Atlantic Solar Energy Indus. Ass'n v. Christie, 418 N.J. Super. 499, 508 (App. Div. 2011); see also R. 2:6-2(a)(5).

claims based on these two theories of liability, Judge Rose noted that "Kearny did not . . . set forth any opposition with respect to [these] . . . contribution claims."  She then held:

> In order for a claim of contribution to succeed, whether common law or statutory, the person from whom contribution is sought, must be at least partially liable to the plaintiff[.]
>
> . . . .
>
> Here, Kearny's common law and statutory claims for contribution fail for the same reason that its claims for implied indemnification failed. That is, [the] NJSEA cannot be responsible for the contamination of the subject property because the contamination at issue occurred long before NJSEA entered into the lease agreement with Kearny.

We agree.  In this appeal, the Town has not cited any authority to rebut Judge Rose's unassailable conclusion based on this settled principle of law.  We thus affirm substantially for the reasons expressed by Judge Rose in her oral decision delivered from the bench on September 16, 2016.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION