**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0560-16T3

ERIC D. AUSTIN and MARIA
AUSTIN,

      Plaintiffs-Respondents,

v.

MORRIS PLAINS
CONTRACTING, LLC, M&M
AT MORRIS PLAINS, LLC, and
PYRAMID CONTRACTING
CORPORATION,

      Defendants,

and

FRENCH & PARRELLO
ASSOCIATES, PA,

      Defendant-Appellant.

_____

Argued September 20, 2018 – Decided July 23, 2019

Before Judges Alvarez, Nugent and Reisner.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6099-13.

Jerald F. Oleske argued the cause for appellants (Oleske & Oleske, LLP, attorneys; Jerald F. Oleske and Robert M. Brigantic, on the briefs).

James S. Lynch argued the cause for respondents (Lynch, Lynch, Held & Rosenberg, PC, attorneys; James S. Lynch and John Randy Sawyer, of counsel and on the brief).

PER CURIAM

Plaintiff Eric D. Austin suffered catastrophic injuries when he fell while working at an industrial site. A jury found defendant French & Parrello Associates, PA (FPA or defendant) 73 percent liable for the accident, resulting in a judgment for approximately $5.8 million in damages to plaintiff[1] and about $380,000 to his wife Maria Austin on her per quod claim. Defendant appeals from the May 26, 2016 judgment, and from an August 25, 2016 order denying its motion for a new trial or for judgment notwithstanding the verdict.

On this appeal, defendant presents the following points of argument[2] for our consideration:

---

[1] Since the appeal focuses on Eric Austin's personal injury claim, we refer to him as "plaintiff."

[2] Contrary to Rule 2:6-2(a)(1), defendant's point headings fail to note arguments not presented to the trial court. In addition, defendant's procedural history and statement of facts are rife with legal argument. We only consider legal arguments set forth in point headings in the legal argument section of the brief.

POINT I
THE VERDICT IN THIS CASE WAS NOT SUPPORTED BY CREDIBLE EVIDENCE AND RESULTED FROM MISTAKE, PARTIALITY, PREJUDICE AND PASSSION.

POINT II
PLAINTIFF'S EXPERT, STEPHEN ESTRIN, SHOULD NOT HAVE BEEN PERMITTED TO OFFER ANY OPINIONS REGARDING THE ALLEGED FAILURE TO DRAFT A FALL PROTECTION PLAN AND/OR A PRE-DEMOLITION ENGINEERING SURVEY.

POINT III
THE TRIAL JUDGE ERRED IN FAILING TO CHARGE THE JURY THAT IT COULD CONSIDER THE NEGLIGENCE OF PLAINTIFF'S EMPLOYER DANCO IN THE CONTEXT OF THE DEFENSE'S POSITION THAT THE ALLEGED CONDUCT OF MR. FISHER OF DANCO IN REQUIRING THE PLAINTIFF TO HARVEST COPPER OUTSIDE OF THE SAFETY OF THE CATWALK WAS THE SOLE AND PROXIMATE CAUSE OF THE ACCIDENT.

POINT IV
THE COURT IMPROPERLY CHARGED THE JURY THAT PLAINTIFF'S RECEIPT OF WORKERS' COMPENSATION BENEFITS WERE NOT ADEQUATE TO COMPENSATE THE PLAINTIFF FOR HIS INJURIES.

---

See Mid-Atlantic Solar Energy Indus. Ass'n v. Christie, 418 N.J. Super. 499, 508 (App. Div. 2011).

3

POINT V

THE COURT ERRED IN FAILING TO GIVE A CURATIVE INSTRUCTION TO THE JURY DURING THE SUMMATION OF PLAINTIFF'S COUNSEL CONCERNING PLAINTIFF'S COUNSEL'S ASSERTION THAT FPA CHOSE NOT TO "BRING TANIS GIVENSKY INTO COURT."

POINT VI

THE MINIMAL ASSESSMENT OF COMPARATIVE NEGLIGENCE AGAINST THE PLAINTIFF DEMONSTRATES THAT THE JURY OVERLOOKED OR IGNORED CRITICAL EVIDENCE IN THIS CASE.

POINT VII

SINCE IT WAS CLEAR FROM THE TESTIMONY OF MR. ESTRIN HIMSELF THAT THE WORK PLAN PUT IN PLACE BY DANCO FOR THE REMOVAL OF PRECIOUS METALS PRIOR TO MECHANICAL DEMOLITION WAS "AN EXCELLENT" FALL PROTECTION PLAN, FPA COULD NOT BE FOUND NEGLIGENT.

POINT VIII

THE COURT ERRED IN CHARGING THE JURY THAT A MAN WHO MUST WORK TO LIVE IS NOT NECESSARILY NEGLIGENT WHENEVER HE CONTINUES TO WORK AFTER LEARNING OF A HAZARD.

Preliminarily, we note that in a March 31, 2017 letter to the Clerk's Office, defense counsel confirmed that "since the quantum of damages has not been appealed, French & Parrello need not include in its revised appendix plaintiff's medical records." Because defendant waived objection to the amount of the

4

verdict and accordingly did not provide relevant portions of the trial record, we decline to consider defendant's Point IV, concerning a jury charge that workers' compensation benefits would not make plaintiff whole. See Joy v. Barget, 215 N.J. Super. 268, 272 (App. Div. 1987). The point is solely relevant to the damage award.

We affirm the denial of the motions for a new trial and judgment notwithstanding the verdict substantially for the reasons stated by Judge Vincent LeBlon in his August 25, 2016 oral opinion. None of defendant's remaining arguments warrant disturbing the verdict, and except as addressed below, they are without sufficient merit to require discussion in a written opinion. R. 2:11-3(e)(1)(E).

Plaintiff and his son Jared were working on a demolition project involving several large industrial buildings. Their employer, Danco General Contracting (Danco), was in the business of demolishing industrial structures, in exchange for permission to "harvest" and resell valuable components of the buildings such as copper piping. On the day of the accident, plaintiff and his son were assigned to cut down and recover copper piping that was located near the ceiling of a large room that was criss-crossed by catwalks or elevated platforms. Plaintiff,

who was not wearing a harness or other fall protection equipment, fell from a catwalk and suffered severe injuries, including traumatic brain damage.

Danco had contracted with defendant FPA for the latter to provide and oversee a safety plan for the job. A central issue in the case was whether FPA's responsibility for planning and overseeing safety on the job site included fall protection. Based on our review of the record, we conclude there was a material factual dispute about that issue, which the trial judge properly let the jury resolve.[3]

At trial, as on this appeal, FPA contended that its responsibility was limited to protecting the workers from environmental hazards, such as toxic chemicals. However, there was sufficient trial evidence – including testimony from Christopher Williams, one of FPA's on-site employees, and Daniel Matarese, Danco's owner – from which reasonable jurors could conclude that FPA undertook broader job safety responsibility, including fall protection.[4]

---

[3] In fact, during oral argument of a mid-trial motion, defendant's counsel conceded that "there's a dispute in the evidence as to what my client was hired to do."

[4] In his deposition testimony, Matarese made several statements that were quite damaging to defendant. In questioning Matarese at trial, defense counsel made a zealous effort to rehabilitate that testimony. However, the jury could have chosen to believe the answers Matarese gave to plaintiff's counsel at the deposition.

A-0560-16T3

Moreover, the "Site-Specific Health and Safety Plan," which FPA prepared for this job, specifically listed "General Demolition" hazards as well as "Environmental" hazards. The general demolition hazards included "Slip, Trip, [and] Fall."

In addition, at his deposition, Ed Hamilton, the FPA employee who negotiated the contract with Danco, undermined FPA's defense based on an exclusion in the contract with Danco. The clause stated that FPA was not responsible for "construction" safety and practices. Hamilton testified that the clause did not apply to this job, because it involved demolition and not construction.

As previously noted, plaintiff fell from an elevated catwalk while carrying out an assignment to harvest copper piping. Plaintiff's son Jared, who was working with his father at the time of the accident, testified that it was necessary to climb over the railings of the catwalks and walk out on unprotected ductwork in order to reach the copper piping. Photographic evidence corroborated his testimony. The photographs showed the location of the copper piping and a series of boot prints on the railings of the catwalks. From the boot prints near the site of plaintiff's fall, a jury could reasonably infer that plaintiff fell while standing on the railing of the catwalk.

A-0560-16T3

Jared also testified that there were an insufficient number of harnesses and lanyards at the job site. He testified that, several days before the accident, he asked a supervisor for a harness to use and was told that there were only enough harnesses for the workers assigned to the scissor lifts. Since Jared was working on a high ladder that day instead of a scissor lift, he was not given a harness. In his testimony, Matarese admitted there were not enough harnesses available for all of the workers on the job site.

Plaintiff presented a demolition safety expert, Stephen Estrin, who testified in great detail about the deficiencies in defendant's performance of its duties, including the failure to create a fall protection plan and properly supervise its implementation. Defendant's argument that Estrin was unqualified to testify as an expert is based on its contention that defendant was solely hired to perform environmental safety engineering. However, Estrin did not testify about environmental safety issues, and there was sufficient evidence to support the factual assumptions that formed the basis for his demolition safety-related opinions.[5]

---

[5] While an affidavit of merit was not required in this situation, we also agree with plaintiff that defendant waived the issue by waiting until the start of the trial to raise it. See Murphy v. New Rd. Const., 378 N.J. Super. 238, 242-43 (App. Div. 2005); Knorr v. Smeal, 178 N.J. 169, 180-81 (2003).

In short, both sides were represented by experienced attorneys who zealously represented their clients, and both sides received an eminently fair trial. Contrary to defendant's arguments, there was no basis for a directed verdict at the close of plaintiff's evidence, the liability verdict was not against the weight of the evidence, and the verdict was not a miscarriage of justice. See R. 4:37-2(b); R. 4:49-1(a); Dolson v. Anastasia, 55 N.J. 2, 5-7 (1969); Dolan v. Sea Transfer Corp., 398 N.J. Super. 313, 329-30 (App. Div. 2008). Defendant's evidentiary issues either were not raised at trial and do not constitute plain error, or are patently insubstantial and do not warrant disturbing the verdict. R. 2:10-2; R. 2:11-3(e)(1)(E).

Defendant's claim that plaintiff's counsel attempted to inflame the jury is not supported by the record. For example, during plaintiff's brief, rambling trial testimony, he mentioned a traumatic experience from his wife's childhood. It would have been clear to the jury that plaintiff, who had suffered brain damage, was giving a stream-of-consciousness, unresponsive answer to a question from his attorney. Plaintiff's counsel did not elicit this testimony, and defense counsel did not object to it. Contrary to another of defendant's arguments, it was not improper for plaintiff's counsel to elicit testimony from Jared that Christopher Williams's workplace nickname was "Kris Kringle." It was obvious from the

9

testimony that the nickname, to which defense counsel also referred, was benign and not pejorative. Neither that reference nor any of the other testimony defendant now cites as improper had a clear capacity to produce an unjust result. See R. 2:10-2.

Defendant's belated objections to the jury charge are likewise without merit. At the charge conference, defense counsel waived his objection to the instruction that the jury could not consider the employer's negligence as an issue in the case, stating that, "if I can argue that the sole proximate cause of this accident is the actions of Mr. Fisher [the Danco supervisor] then I'm fine." Defense counsel also waived objection to the "work to live" charge, noting that he would "deal with it." Defense counsel's summation took full tactical advantage of the expected jury charges to which he had agreed.[6] Neither charge was error, much less plain error. R. 1:7-2; R. 2:10-2.

Defendant's argument concerning the relatively small amount of negligence the jury attributed to plaintiff is likewise unpersuasive. As an

---

[6] After both sides had given their summations, which took into account their agreement at the charge conference, defense counsel asked Judge LeBlon to reconsider the employer negligence issue, charge the jury as to Danco's negligence, and change the verdict sheet. Judge LeBlon denied the requests, noting that they were asserted untimely and granting them would cause plaintiff "undue prejudice." We affirm that ruling for the reasons the judge stated.

understandable litigation tactic, defense counsel's closing argument avoided blaming the badly-injured plaintiff for the accident and instead focused blame on one of the settling defendants, Morris Plains Contracting. In his closing, plaintiff's counsel reminded the jury that even defendant's safety expert attributed only "a little bit" of fault to plaintiff. Absent plain error, of which we find none, defendant is not entitled to relief from the consequences of its chosen trial strategies. See T.L. v. Goldberg, __ N.J. __, __ (2019) (slip op. at 18-19).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0560-16T3