**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1816-19

ENGY ABDELKADER,

 Plaintiff-Appellant,

v.

AHMED ISLAME HOSNY,

 Defendant-Respondent.

_____

Submitted May 3, 2021 – Decided June 2, 2021

Before Judges Messano and Hoffman.

On appeal from the New Jersey Superior Court, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0390-11.

Engy Abdelkader, appellant pro se.

Laufer, Dalena, Jensen, Bradley & Doran, LLC, attorneys for respondent (Michelle A. Benedek-Barone, of counsel and on the brief).

PER CURIAM

This post-judgment dispute is before us a second time.  In our prior opinion, we set out the salient facts regarding the parties' marriage, separation, divorce, plaintiff's unilateral relocation to Virginia with the parties' son, A.H. (Alec), Alec's return to New Jersey in his father's custody, and plaintiff's ultimate return to New Jersey.[1]  Abdelkader v. Hosny, No. A-1666-16 (App. Div. July 26, 2018).  The parties are intimately familiar with those details, and we need not repeat them again except as necessary to resolve the issues now presented.  Ultimately, we dismissed plaintiff's appeal as moot but concluded "there [were] sufficient changes in the circumstances of [Alec]'s life to warrant a plenary hearing at which the judge shall determine what custodial arrangement now serves [the child's] best interests."  Id. at 9 (citing N.J.S.A. 9:2-4).

The plenary hearing took place before Judge Michael A. Guadagno, now retired on recall, during eight court sessions commencing on August 5, 2019.[2]  On December 12, 2019, he entered an order that: continued defendant as the parent of primary residence (PPR); left unchanged a prior order fixing plaintiff's

---

[1]  We use initials and a pseudonym for the child pursuant to Rule 1:38-3(d)(3).

[2]  Prior to his retirement, Judge Guadagno was the trial judge who entered the parties' 2011 final judgment of divorce (JOD), which incorporated their property settlement agreement (PSA).  He was not involved in the post-judgment orders that were the subjects of plaintiff's first appeal.

child support obligation; appointed a parenting coordinator with significant authority and with costs borne equally by the parties; and required the parties to enroll Alec, then almost ten-years old, "in therapy consistent with the findings" in the judge's extensive written decision.

Plaintiff now appeals asserting errors regarding certain procedural aspects of the plenary hearing, Judge Guadagno's consideration of the evidence adduced at the hearing, and his ultimate decision to designate defendant as PPR. Plaintiff urges us to reverse the order and remand again for another hearing before a different judge. We address each of plaintiff's contentions below. We find them unpersuasive and affirm.

I.

Both parties are attorneys, and plaintiff has represented herself throughout the proceedings following our remand.[3] At the first case management conference in August 2018, Judge Sheedy established a discovery schedule including dates for the retention of experts. Defendant declined any request to hire a joint expert and hired Dr. Sharon Ryan Montgomery to conduct a best-interests evaluation. Dr. Elise Landry had prepared a custody neutral assessment

---

[3] The pre-plenary hearing proceedings were conducted by the presiding judge of the Family Part, Kathleen A. Sheedy.

(CNA) during the earlier litigation when plaintiff relocated to Virginia with Alec. After a second case management conference, Judge Sheedy entered an order requiring plaintiff to retain Landry "to prepare an update of her 2016 report."

Disputes regarding parenting time erupted, along with other issues, and a flurry of motion practice commenced. In November, Judge Sheedy ordered plaintiff to "pay the full amount for an updated assessment with Dr. Landry." A new round of motions led to the judge's December 14, 2018 order (the December 2018 order) and a forty-nine page written opinion in which she again denied plaintiff's request for modification of her child support without prejudice, but also reserved the issue for the plenary hearing, at which "[t]he [c]ourt will hear arguments as to the child support and income imputation issues . . . and will calculate child support . . . after that time." The order continued plaintiff's then-current child support of $130 per week to be paid through probation.

The December 2018 order also denied several requests made by defendant regarding plaintiff's alleged support arrearages, payment for Alec's extracurricular activities and other financial issues, reserving them for the plenary hearing. Judge Sheedy denied defendant's request that she recuse herself. Finally, the December 2018 order required both parties and Alec to

meet with Landry in January for preparation of an updated CNA. We denied defendant's request to seek emergent relief from the December 2018 order.

Landry issued an updated CNA in January 2019. We discuss the report and her testimony below, but, for the moment, it suffices to note that Landry forwarded the report directly to the court, requested a protective order issue, and suggested that neither party receive a copy nor share its contents with Alec. However, Landry suggested that defendant's expert receive a copy to "fully address[] the concerns" noted.[4] Judge Sheedy entered a protective order barring report's dissemination to anyone other than the parties and their attorneys.

There was apparent confusion because plaintiff was initially told she could only come to chambers to review Landry's report even though it had been sent to defense counsel. In any event, plaintiff received the report at a March 29, 2019 case management conference and well in advance of the hearing.

Prior to that conference, on March 5, 2019, Landry wrote to Judge Sheedy, noting plaintiff's representation that the judge referred to Landry "on the record" as plaintiff's expert.[5] Landry stated she was ethically prohibited from serving as

---

[4] Ultimately, Montgomery never reviewed the updated CNA.

[5] We have only been provided with the transcripts from the plenary hearing before Judge Guadagno.

both a party's expert and CNA analyst. She had explained this when first contacted by plaintiff and provided plaintiff with names of other psychologists in the area. Landry said that plaintiff "never once expressed that she considered me her expert and . . . explained that she had not retained an independent expert because of financial concerns." On April 3, 2019, plaintiff sent a letter to Judge Sheedy, noting Landry's ethical reservations and her concerns over Alec's well-being. Plaintiff urged the court "to take appropriate measures to protect the parties' child beyond the mere issuance of a protective order."

At the initial hearing before Judge Guadagno, plaintiff objected to the judge's stated intention to interview Alec in chambers. The judge initially reserved decision but ultimately did conduct the interview, as we explain below. Judge Guadagno also addressed defense counsel's objection to plaintiff referring to Landry as a "[c]ourt-appointed expert." He noted that CNAs are done "in order [for the court] to have an expedited input" but they "fall[] short of a full-blown custody evaluation." The judge noted he would consider any report admitted into evidence and "give them the appropriate weight," but "putting names on them as the [c]ourt expert or defendant['s] expert or plaintiff's expert . . . doesn't really move the ball forward."

A-1816-19

Plaintiff testified, as did her mother and Landry. Defendant testified, as did Montgomery, defendant's brother, two of defendant's neighbors, and one of Alec's babysitters. We discuss as necessary the testimony and Judge Guadagno's specific findings and conclusions based on the evidence adduced at the hearing in the context of plaintiff's specific points on appeal.

## II.

It is well-established that "[w]e grant substantial deference to a trial court's findings of fact and conclusions of law, which will only be disturbed if they are manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence." N.H. v. H.H., 418 N.J. Super. 262, 279 (App. Div. 2011) (quoting Crespo v. Crespo, 395 N.J. Super. 190, 193–94 (App. Div. 2007)). This is particularly so where the evidence is largely testimonial and rests on the judge's credibility determinations. Gnall v. Gnall, 222 N.J. 414, 428 (2015). In addition, we particularly "recogniz[e] the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282–83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). However, "[a] more exacting standard governs our review of the trial court's legal conclusions[,] . . . [which] we review . . . de novo." Id. at 283 (citing D.W. v. R.W., 212 N.J. 232, 245–46 (2012)).

A.

Plaintiff contends in Points One, Three and Four that Judge Guadagno erred because he: "consistently refused to enforce the [PSA]"; misapplied the best-interests of the child standard and "cherry[-]picked evidence" to support the result; and abused his discretion by interviewing Alec and relying on the child's answers as "dispositive," despite conclusions in Landry's report about Alec's deteriorating emotional state and her recommendation that the court appoint a guardian ad litem (GAL) for the child.[6]

(i)

The PSA focused almost entirely on custody and parenting time. It provided for the parties to share legal custody and designated plaintiff as PPR. The parties were permitted to make "ordinary day-to-day decisions" about Alec's "daily routines" when he was in their custody, but they were required to consult

---

[6] Plaintiff does not specifically challenge that portion of Judge Guadagno's order maintaining her child support obligation at the same level. She mentions only in passing that Judge Guadagno did not address the issue, even though Judge Sheedy had reserved resolution of plaintiff's earlier motion for modification until completion of the plenary hearing. An issue not briefed on appeal is deemed waived. Pullen v. Galloway, 461 N.J. Super. 587, 595 (App. Div. 2019) (citing N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2, (App. Div. 2015)); see also Mid-Atlantic Solar Energy Indus. Ass'n v. Christie, 418 N.J. Super. 499, 508 (App. Div. 2011) (noting cursory discussion of an issue in a brief is improper).

A-1816-19

each other and could not act unilaterally on any "matters of importance" concerning Alec's health, education, religion, and general welfare. In addition to detailed parenting time provisions, the PSA provided for a right of first refusal in the event either parent was unavailable to care for Alec during their parenting time, whereby the other parent could give notice of their intent to care for Alec, rather than using a "third-party caregiver." The parties would share equally the transportation responsibilities associated with parenting time, but if defendant exercised additional parenting time, he would be responsible for "transportation both ways." Significantly, the PSA provided that neither parent could relocate with Alec outside of New Jersey without the consent of the other parent or an order of the court.

Most significantly, plaintiff contends Judge Guadagno ignored the PSA's designation of her as PPR. Plaintiff correctly notes that our courts have recognized the contractual nature of PSAs, and that they "should be enforced according to the original intent of the parties." J.B. v. W.B., 215 N.J. 305, 326 (2013) (citing Pacifico v. Pacifico, 190 N.J. 258, 265–66 (2007)). Essentially, she contends that although she moved to Virginia with her son in violation of the PSA, and that ultimately resulted in defendant having custody of Alec in New Jersey since December 2016, see Abdelkader, slip op. at 4, Judge

A-1816-19

Guadagno should have enforced the terms of the PSA and re-designated her as PPR.

"The touchstone for all custody determinations has always been 'the best interest[s] of the child.'" Faucett v. Vasquez, 411 N.J. Super. 108, 118 (App. Div. 2009) (alteration in original) (quoting Kinsella v. Kinsella, 150 N.J. 276, 317 (1997)). "Parties cannot by agreement relieve the court of its obligation to safeguard the best interests of the child." P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999) (citing In re Baby M., 109 N.J. 396, 418 (1988)). "A custody arrangement adopted by the trial court, whether based on the parties' agreement or imposed by the court, is subject to modification based on a showing of changed circumstances, with the court determining custody in accordance with the best interests standard of N.J.S.A. 9:2-4." Bisbing v. Bisbing, 230 N.J. 309, 322 (2017). Changed circumstances that affect the child's welfare are sufficient to order a plenary hearing and possibly modify any prior agreement or order regarding these issues. Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (citations omitted).

Our prior opinion determined that plaintiff's initial relocation to Virginia and the multiple relocations of Alec resulted in a "whirlwind of changed circumstances" in his young life that made a plenary hearing necessary.

Abdelkader, slip op. at 8–9. Judge Guadagno was free to consider the evidence at that hearing and enter an order designating which parent would serve as PPR, guided solely by what was in Alec's best interests and without regard to the terms of the PSA. Plaintiff's contention requires no further discussion. R. 2:11-3(e)(1)(E).

Seen through this prism, plaintiff's claims that Judge Guadagno refused to enforce other terms of the PSA, including her "right of first refusal" to parenting time, the PSA's prohibition against unilateral decision making and the equal sharing of transportation costs, fall by the wayside.

Other than ordering that defendant would remain Alec's PPR, the judge left it to the parenting coordinator "to aid the parties in monitoring their existing parenting plan." Judge Guadagno only discussed plaintiff's right of first refusal and defendant's unilateral decision making in the context of making findings and weighing the statutory best interest factors, see N.J.S.A. 9:2-4(c). In doing so, he signaled his agreement with Judge Sheedy's December 2018 order regarding the right of first refusal.

The December 2018 order granted plaintiff's request for modification of the existing parenting time schedule and provided her with additional time with Alec. Judge Sheedy, however, rejected plaintiff's request that defendant provide

her with forty-eight hours advanced notice whenever he intended to have a "third-party caregiver" stay with Alec. At the same time, Judge Sheedy rejected defendant's request to set "reasonable parameters" for each party to exercise their respective rights of first refusal in the PSA. She concluded that the PSA "specifically contemplate[d] the right of first refusal when the parties are unable to care for [Alec] and/or will not be able to sleep in the same home with [Alec]." This was certainly a reasonable interpretation of the PSA's provisions; plaintiff's argument that defendant must permit her to parent Alec for short periods of time instead of using a babysitter was not, and it was contradicted by other provisions of the PSA where it was anticipated that others, like part-time nannies, might be necessary to assist with childcare.

While the record reveals that defendant acted unilaterally on occasion, it also demonstrates plaintiff's unilateral actions prior to 2016, when she was Alec's PPR. When the parties executed the PSA, the agreement logically placed the costs of parenting time transportation on defendant, because he was not the PPR. Things had obviously changed by the time Judge Sheedy entered the December 2018 order that modified parenting time pending the plenary hearing. But, by then, plaintiff was no longer the PPR, and Alec had resided primarily with defendant for some time.

(ii)

In Point IV, plaintiff argues that the court abused its discretion by conducting an in-camera interview of Alec and subsequently giving his responses dispositive weight in the best-interests analysis. She suggests that Judge Guadagno failed to consider Alec's emotional state, lack of capacity, and the totality of the circumstances. We find no mistaken exercise of the court's discretion.

After initially reserving on the issue when plaintiff objected, the judge determined he would conduct the interview, finding that Rule 5:8-6 "favors" an in-camera interview of the child. Based on other testimony, the judge concluded that Alec was a "very bright child" and that, at the age of nine, he was of "adequate age to at least present [his] wishes, and that's all we are doing here." Judge Guadagno allowed the parties to submit questions for Alec, and plaintiff did so. After conducting the interview, the judge made the transcript available to the parties.[7] In his written decision, Judge Guadagno rejected plaintiff's argument that Alec did not have the capacity to express his wishes. The judge concluded that Alec "possesses the maturity and judgment to express his custodial preference."

---

[7] The transcript does not appear in the record.

Rule 5:8-6 provides, in pertinent part:

> As part of the custody hearing, the court may on its own motion or at the request of a litigant conduct an in camera interview with the child(ren). In the absence of good cause, the decision to conduct an interview shall be made before trial. If the court elects not to conduct an interview, it shall place its reasons on the record. If the court elects to conduct an interview, it shall afford counsel the opportunity to submit questions for the court's use during the interview and shall place on the record its reasons for not asking any question thus submitted. A stenographic or recorded record shall be made of each interview in its entirety. Transcripts thereof shall be provided to counsel and the parties upon request and payment for the cost.

"[T]he preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision" is a relevant part of the court's calculus when making a custody award. N.J.S.A. 9:2-4(c). "[T]he decision whether to interview a child in a contested custody case is left to the sound discretion of the trial judge, which, as in all matters affecting children, must be guided by the best interest of the child." D.A. v. R.C., 438 N.J. Super. 431, 455–56 (App. Div. 2014).

Plaintiff contends that Alec's emotional state was such that the judge should not have conducted the interview. She cites Landry's report, which recommended appointment of a guardian ad litem for the child. However, Judge

14

Guadagno was in the best position to assess Alec's ability to participate in the interview without doing any further harm to the child.

In <u>Mackowski v. Mackowski</u>, interpreting a prior iteration of the rule that required the court to conduct an interview of the child upon a party's request, we rejected the trial judge's refusal because of concerns about the child's welfare. 317 N.J. Super. 8, 11 (App. Div. 1998). We made clear:

> The value of a properly conducted interview enabling the judge to see and hear the child first-hand outweighs the possibility of harm that may befall a child by being subjected to the interview process. On balance, it is not the interview that is ultimately harmful, but the custody dispute between the parties that potentially wrecks havoc with the child.
>
> [<u>Id.</u> at 14.]

Judge Guadagno noted that Alec had a clear preference for maintaining the status quo with defendant as PPR, and he "provided compelling reasons for doing so[.]" Contrary to plaintiff's contention, the judge did not give the interview "dispositive" weight; rather, he made findings and reached conclusions on all the statutory factors, including the preference of the child. There was no mistaken exercise of discretion in interviewing Alec.

15

(iii)

In Point III, plaintiff argues Judge Guadagno "cherry[-]picked" the evidence supporting the result and misapplied the statutory best-interest factors. We again disagree.

> Determining what custodial arrangement is in the best interest of a child requires the Family Part judge to apply the statutory factors outlined in N.J.S.A. 9:2-4, as complimented by the relevant court rules governing an award or change of custody, and reach a conclusion that is supported by the material factual record.
>
> [D.A., 438 N.J. Super. at 450.]

"[A]s a general proposition, we should accord great deference to discretionary decisions made by Family Part judges, provided they are supported by adequate, substantial, and credible evidence in the record." Id. at 451 (citing Cesare, 154 N.J. at 411–13 (1998)).

Here, Judge Guadagno considered all the factors set forth in N.J.S.A. 9:2-4(c). He did not ignore evidence that was favorable to plaintiff or detrimental to defendant. For example, in analyzing the ability of the parents "to agree, communicate and cooperate in matters relating to" Alec, ibid., the judge cited both Landry's report and Montgomery's report and recognized both parents had failed to cooperate with each other. However, he cited to substantial evidence in the record that led him to conclude "plaintiff's failures in this regard have

16

been more troubling." The judge also cited specific credible evidence in the record that supported his conclusion that defendant was willing to facilitate plaintiff's parenting time, but plaintiff showed a tendency to arbitrarily interfere with defendant's time.

Plaintiff contends that the judge downplayed Landry's conclusion that Alec's emotional stability had deteriorated since 2016, and she correctly notes that only Landry, with the benefit of her 2016 CNA evaluation, had the ability to compare Alec's condition before and after defendant became his PPR. However, the judge credited Montgomery's opinion that Alec had a positive relationship with both parents and that the child's emotional problems predated his 2016 return to New Jersey and defendant's custody. It was well within the judge's discretion to credit all or none of the expert testimony in the case. Todd v. Sheridan, 268 N.J. Super. 387, 401 (App. Div. 1993).

In several other instances Judge Guadagno considered evidence that supported plaintiff's position. He noted, for example, that Alec generally "thrived in the custody of each parent[,]" and that both parents were able to meet the child's needs. Plaintiff's broad contention that the judge misapplied the statutory factors and made findings unsupported by the credible evidence in the record is simply unavailing.

A-1816-19

B.

In Point II, plaintiff argues it was error for Judge Sheedy to re-appoint Landry to produce an updated CNA when custody was in dispute. As best we can discern, plaintiff contends the court should have appointed its own expert. She also argues it was reversible error for Judge Sheedy to withhold Landry's report from plaintiff, and for Judge Guadagno to ignore Landry's recommendations, specifically, that a GAL be appointed on Alec's behalf and the family meet with "a joint or court-appointed child custody expert."

Initially, any delay in providing plaintiff with Landry's report was inconsequential; as noted, plaintiff had the report well in advance of the actual hearing. Following our remand, Judge Sheedy allowed both parties to retain custody experts, but, apparently for financial reasons, plaintiff chose not to do so. Instead, she announced her intention to produce Landry as a witness and Judge Sheedy properly ordered that to the extent Landry would be reprising her 2016 report, it should be updated.

Clearly, the court has the authority to appoint its own expert. R. 5:3-3(d). As already noted, we have not been provided with transcripts of the pre-hearing case management conferences. We have no idea whether plaintiff specifically requested that relief. In her April 3, 2019 letter to Judge Sheedy noting Dr.

Landry's ethical dilemma, plaintiff only urged the court "to take appropriate measures to protect the parties' child beyond the mere issuance of a protective order." Before us, plaintiff's brief contains no citation to the record demonstrating she specifically asked the court to appoint an expert because of her financial difficulties. Plaintiff only notes that Judge Sheedy's written opinion supporting the December 2018 order makes no reference to a court-appointed custody expert. Under the circumstances, we cannot conclude it was a mistaken exercise of discretion for the court not to appoint an independent expert. Plaintiff's claim that Landry was somehow an "improper" expert is unavailing.

Plaintiff contends that Judge Guadagno erred by ignoring Landry's recommendation during her testimony at the hearing that there be a full-blown, court-appointed best-interests evaluation. However, the judge had the benefit of Landry's report and testimony, as well as Montgomery's report and testimony. He also had the benefit of the testimony from several other witnesses and his interview of Alec.

Moreover, Rule 5:3-3 provides an important framework for the court's consideration of any custody expert's report, regardless of his or her retention. First, "[m]ental health experts who perform parenting/custody evaluations shall

conduct strictly non-partisan evaluations to arrive at their view of the child's best interests, regardless of who engages them." R. 5:3-3(b) (emphasis added). Second, "[a]n expert appointed by the court shall be subject to the same examination as a privately retained expert and the court shall not entertain any presumption in favor of the appointed expert's findings." R. 5:3-3(g) (emphasis added). Judge Guadagno completely understood these principles because at the very outset of the hearing, he addressed plaintiff's reference to Landry as a "court-appointed" expert and explained to plaintiff and defense counsel that he was duty bound to consider the opinions without regard to who retained the expert. Applying these principles, we are unpersuaded that the court's failure to appoint a neutral expert made any material difference in the outcome of this case.

## C.

Defendant argues that it was error to admit Montgomery's report into evidence because it was furnished "on the eve of trial" and without an opportunity for plaintiff to engage in discovery. The argument lacks sufficient merit to warrant extensive discussion. R. 2:11-3(e)(1)(E).

The initial date set for the plenary hearing was adjourned because Montgomery's report was not completed. It was not served until July 15, 2019,

A-1816-19

only weeks before the hearing commenced. When plaintiff objected to the report's admission at the hearing, Judge Guadagno cited an earlier ruling by Judge Sheedy that refused to bar the report.[8] He also concluded that plaintiff suffered no prejudice.

In reviewing a Family Part judge's evidentiary ruling, we consider it for an abuse of discretion. N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 492 (App. Div. 2016). We reverse discretionary determinations, as with all rulings on the admissibility of evidence, only "when the trial judge's ruling was 'so wide of the mark that a manifest denial of justice resulted.'" N.J. Div. of Youth & Fam. Servs. v. M.G., 427 N.J. Super. 154, 172 (App. Div. 2012) (quoting State v. Carter, 91 N.J. 86, 106 (1982)).

We find no mistaken exercise of discretion here, and, even if the report itself should have been excluded, Montgomery testified as to its contents and her opinions contained in the report. Any error was harmless. R. 2:10-2.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[8] There is nothing in the appellate record that memorializes this ruling other than Judge Sheedy's July 11, 2019 case management order that required Montgomery's report to be provided to plaintiff by July 15.